**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**
**CASE NO.:  22-CV-80726-DMM**

ARTHUR BARRY SOTLOFF Individually and as the
Administrator of the Estate of STEVEN JOEL SOTLOFF;
SHIRLEY GOLDIE PULWER, AND LAUREN
SOTLOFF,

                          Plaintiffs,

Vs.

QATAR CHARITY, a Foreign Non-Profit Organization
and QATAR NATIONAL BANK (Q.P.S.C), a Foreign
Multinational Commercial Bank

                          Defendants.

_____/


**PLAINTIFF'S _EX PARTE_ MOTION FOR ORDER AUTHORIZING ALTERNATIVE**
**SERVICE OF PROCESS UPON THE FOREIGN DEFENDANTS**

Plaintiffs, ARTHUR BARRY SOTLOFF Individually and as the Administrator of the Estate of

STEVEN JOEL SOTLOFF, SHIRLEY GOLDIE PULWER and LAUREN SOTLOFF requests

the Court authorize alternative service of process on Defendants QATAR CHARITY, a Foreign

Non-Profit Organization and QATAR NATIONAL BANK (Q.P.S.C), a Foreign Multinational

Commercial Bank and in support state as follows:

## I. INTRODUCTION

1. Plaintiff are suing Defendants for having caused violent acts of terrorism against their son, Steven Sotloff, under 18 U.S.C. §§ 2333(d), 2339A and 2339B and the Justice Against Sponsors of Terrorism Act ("JASTA") § 2b.  Complaint [DOC1] at ¶¶ 237, 249, 251, 261, 264, 278, 280, and 290.

2. As more fully set forth herein, Plaintiffs seek an order, pursuant to Fed. R. Civ. P. 4(f)(3), authorizing service of process on foreign defendants via FedEx to their offices in Qatar and via email to counsel located in New York city, which counsel are actively representing these defendants in three other lawsuits arising from allegations of terror finance and brought under the same statutory provisions.

## II. STATEMENT OF FACTS

3. Plaintiffs, relatives of Steven Sotloff, are all citizens of the United States, and were injured by acts of international terrorism that arose from the Defendants' conspiracy to support ISIS and the efforts Defendants undertook to aid and abet that violence.  Complaint ¶¶24, 29-31 [DOC 1].

4. Plaintiffs allege that Defendants are members of a conspiracy that financed the notorious terrorist organization the Islamic State of Iraq and Syria ("ISIS") at the same time that ISIS was holding Steven Sotloff hostage and torturing him. ISIS would eventually behead Steven Sotloff on August 31, 2014, at the written direction of ISIS judge Fadhel al Salim ("al Salim"), a man to whom the members of this conspiracy paid $800,000 ten months earlier. This payment enabled al Salim to fund a militant brigade, join ISIS, and destabilize Syria by committing acts of terror, such as the murder of American hostages like Steven. *Id*. at ¶¶ 2 and 3.

5. Plaintiffs assert claims against Defendants for money damages under 18 U.S.C. §§ 2333(d), 2339A and 2339B and the Justice Against Sponsors of Terrorism Act ("JASTA") § 2b. *Id*. at ¶¶ 237, 249, 251, 261, 264, 278, 280, and 290.

6. Defendants Qatar National Bank and Qatar Charity are entities created under the laws of the State of Qatar that have their principal places of business in the State of Qatar.  Perles Decl. at ¶¶ 2, 4-6 and Complaint [DOC1] at ¶¶ 32-82.

7. Defendants are subject to personal jurisdiction in the United States pursuant to 18 U.S.C. § 2334(a), CPLR § 302, and Fed. R. Civ. P. 4(k)(1)-(2) because they transacted business and committed tortious acts within the United States by transferring funds through the United States for the benefit of terrorists organizations such as ISIS, purposefully availing themselves of United States jurisdiction.  *Id*. at ¶¶ 23-27. Additionally, Defendants directed tortious conduct towards the United States in that they materially supported ISIS while that organization targeted and held American hostages. *Id*.

8. QNB, founded in 1964, was Qatar's first domestically owned commercial bank. As per QNB's website, QNB is a multinational banking organization. The Qatar Investment Authority, Qatar's state-owned sovereign wealth fund, owns a 50% interest in QNB. Complaint at ¶¶ 32-39.

9. Qatar Charity is a non-profit organization founded in 2002 as the Qatar Charitable Society. Complaint at ¶ 40.

10. As per USC Title 22 Foreign Relations, Chapter I Department of State, Sec 92.54, Letters Rogatory, through diplomatic channels, are mandated for formal service in all countries that are not parties to an international process treaty. Documents must be sent through diplomatic channels adhering to strict formal diplomatic protocol.

11. There are currently three cases pending in the United States District Court for the Eastern District of New York, in which both QNB and the Qatar Charity are defendants.

12. As in this matter, the plaintiffs in those three cases allege Qatar Charity and Qatar National Bank engaged in acts of terror finance in violation of the Anti Terrorism Act ("ATA"), 18 U.S.C. § 2331 et seq.  the three case (the "EDNY actions") are captioned as follows:

    a. *Force v. Qatar Charity*, No. 20-2578-BMC (EDNY)

    b. *Przewozman v. Qatar Charity*, No. 20-6088-NGG-RLM (EDNY)

    c. *Henkin v. Qatar Charity*, No. No. 21-6716-AMD-VMS (EDNY)

       *S*worn Declaration of Joshua K. Perles at ¶3.

13. In all three of the aforementioned EDNY actions, the DLA Piper LLP US attorneys John M. Hillebrecht (john.hillebrecht@dlapiper.com), Jessica A. Masella (jessica.masella@dlapiper.com), Kevin Walsh (kevin.walsh@dlapiper.com), and Michael George Lewis (michael.lewis@dlapiper.com) entered an appearance on behalf of Qatar Charity. *Id.* at ¶4.

14. In all three of the aforementioned EDNY actions, the Ropes and Gray attorneys Michael G. McGovern (michael.mcgovern@ropesgray.com), Brittany Grace Norfleeet (brittany.norfleet@ropesgray.com), Douglass H Hallward-Driemeier (douglas.hallward-driemeier@ropesgray.com), and Mary Brust (mary.brust@ropesgray.com) entered an appearance on behalf of Qatar Charity. *Id.* at ¶5.

15. On February 18, 2022, an associate at DLA Piper LLP US, emailed counsel for plaintiffs in *Przewozman v. Qatar Charity*, No. 20-6088-NGG-RLM (EDNY) on behalf of Qatar Charity and Qatar National Bank seeking plaintiffs' consent for service via e-mail of all motion papers, to which plaintiffs consented.  *Id.* at ¶7.

16. Counsel for plaintiffs in the EDNY actions communicated successfully with counsel for Defendants at the above-listed email addresses. *Id.* at ¶ 6.

17. Plaintiffs in the EDNY actions, Qatar Charity, and Qatar National Bank have fully briefed motions to dismiss for failure to state a claim. Sworn Declaration of Joshua K. Perles at ¶8.

18. Plaintiffs in the EDNY actions successfully served copies of the summons, complaint, and certified Arabic translation of each on Qatar Charity via FedEx at Building 18, Street 132, Zone 69, Doha, Qatar, and on Qatar National Bank at Qatar National Bank Building, Al Corniche Street, Doha, Qatar. *Id.* at ¶9.

19. In the EDNY actions it took over two years from the filing of the earliest complaint (June 10, 2020) for defendant Qatar National Bank to receive service by letters rogatory (August 1, 2022). Qatar Charity has yet to acknowledge receipt of service by letters rogatory. *Id.* at ¶10.

### III. Memorandum Of Law

20. In regard to service on a foreign corporation, Fed. R. Civ. P. 4(h), states, in pertinent part:

> (h) Serving a Corporation, Partnership, or Association. Unless federal law provides otherwise …, a domestic or foreign corporation, …. that is subject to suit under a common name, must be served:
> (1) in a judicial district of the United States:
> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant; or
> (2) at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i).

21. Fed. R. Civ. P. 4(f) states, in pertinent part,

> Serving an Individual in a Foreign Country. Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a

5

person whose waiver has been filed--may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;

(2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

(A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

(B) as the foreign authority directs in response to a letter rogatory or letter of request; or

(C) unless prohibited by the foreign country's law, by:

(i) delivering a copy of the summons and of the complaint to the individual personally; or

(ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) **by other means not prohibited by international agreement, as the court orders**.

*Id*. (emphasis added).

22.  A particular method of service satisfies Constitutional due process requirements where "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," where the notice is "of such nature as reasonably to convey the required information" and affords "a reasonable time for those interested to make their appearance." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

23. Federal Rule of Civil Procedure 4(h)(2) directs that service upon foreign corporations be conducted "in any manner prescribed by Rule 4(f)."

24. Rule 4(f), in turn, enumerates litigants' choices for acceptable methods of service, the last of which, Rule 4(f)(3), provides for service "by other means not prohibited by international agreement, as the court orders."

25. Service of process in a place not within a judicial district of the United States may be accomplished in contravention of the laws of the foreign country so long as that service is

6

court-directed and not prohibited by an international agreement, alternate. *Prewitt Enters., Inc. v. The Org. of Petrol. Exporting Countries*, 353 F.3d 916, 923 (11th Cir. 2003). *See also Brookshire Bros., Ltd. v. Chiquita Brands Int'l*, Case No. 05-CIV-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007); *Rio Props. Inc., v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). *Chanel, Inc. v. Zhixian*, Case No. 10-cv-60585-JIC, 2010 WL 1740695, at *3 (S.D. Fla. April 29, 2010) (quoting *Rio Props.*, 284 F.3d at 1014 and citing *Mayoral–Amy v. BHI Corp.*, 180 F.R.D. 456, 459 n. 4 (S.D. Fla. 1998)). Accordingly, Qatar law need not permit service by FedEx and Email in order for Defendants to be so served in this matter.

26. There is no international agreement in place between the United States and Qatar regarding service of process. Accordingly, service by FedEx and email on Defendants in this matter is not prohibited by international agreement.

27. The plain language of Rule 4(f)(3) reflects that the decision to issue an order allowing an alternate means of service lies within the sole discretion of the District Court. *Prewitt Enters., Inc.*, 353 F.3d at 921; *Rio Props.*, 284 F.3d at 1116. See, e.g., *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *2 (noting that "district courts have broad discretion under Rule 4(f)(3) to authorize other methods of service"); *In re Int'l Telemedia Assocs.*, 245 B.R. 713, 720 (N.D. Ga. 2000) (noting that Rule 4(f)(3) is designed to allow courts discretion and broad flexibility to tailor the methods of service for a particular case).

28. Rule 4 does not require a party attempt service of process by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the court for alternative relief under subsection 4(f)(3). *Rio Props.*, 284 F.3d at 1114-15; *see also Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1. In Brookshire,

the Honorable Judge Marcia G. Cooke allowed substitute service on a party's attorney pursuant to Rule 4(f)(3) holding as follows:

> Rule 4(f)(3) is one of three separately numbered subsections in Rule 4(f) and each subsection is separated from the one previous merely by the simple conjunction 'or.' Rule 4(f)(3) is not subsumed within or in any way dominated by Rule 4(f)'s other subsections; it stands independently on equal footing. Moreover, no language in Rules 4(f)(1) or 4(f)(2) indicates the primacy, and certainly Rule 4(f)(3) indicates no qualifiers or limitations which indicate its availability only after attempting service of process by other means.

*Brookshire Bros., Ltd.*, 2007 WL 1577771, at *1 (quoting *Rio Props.*, 284 F.3d at 1015). Accord *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. Jan 11, 2012) (noting that, in regards to Rule 4(f)(3), "there is no indication from the plain language of the Rule that the three subsections, separated by the disjunctive "or," are meant to be read as a hierarchy.") Judge Cooke further held, "[t]he invocation of Rule 4(f)(3), therefore, is neither a last resort nor extraordinary relief." *Brookshire Bros., Ltd.*, 2007 WL 1577771, at *2. *See also Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106 (S.D.N.Y.2010) ("Service of process in a foreign country under the rule allowing court-ordered service by any means not prohibited by international agreement is neither a last resort nor extraordinary relief; it is merely one means among several which enables service of process on an international defendant."); *Forum financial Group LLC v President & Fellows of Harvard College*, 199 F.R.D. 22 (USDC, D. Maine 2001) at 23-24 ("By its plain language and syntax, Rule 4(f)(3)'s alternative is not a last resort, nor is it any less favored than service under subsections (1) and (2).3 Rule 4(f)'s plain language unambiguously indicates that the only limit it imposes on court-directed service under Rule 4(f)(3) is that the means must not be prohibited by international agreement.")

29. As long as court-directed and not prohibited by an international agreement, alternate service of process in a place not within a judicial district of the United States may be accomplished in contravention of the laws of the foreign country. *Rio, id*. at 104.

30. Additionally, the Constitution itself does not mandate that service be effectuated in any particular way.  Rather, Constitutional due process considerations require only that the method of service selected be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Brookshire Bros.*, Ltd., 2007 WL 1577771, at *1 (quoting *Mullane*, 339 U.S. at 314); *see* also *TracFone Wireless, Inc.*, 278 F.R.D. at 692; *Rio Props.*, 284 F.3d at 1016.

31. Under circumstances similar to those present here, numerous courts have held that service via mail on the respective counsel who had appeared for the foreign defendants comported with constitutional due process, supporting a motion for service by alternative means.  *See e.g.  U.S. v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262 (S.D.N.Y.2012); *I*n re TFT-LCD (Flat Panel) Antitrust Litigation*, 270 F.R.D. 535 (N.D.Cal.2010).  *See also Halvorssen v. Simpson*, 328 F.R.D. 30, (USDC E.D. New York 2018) (To pass Constitutional requirements of due process, domestic service of process on counsel of an international defendant, which may include service via electronic means, must be supported by a showing of adequate communication between the person to be served and counsel.)

**32.** Courts have upheld the sufficiency of Rule 4(f)(3) service where, as here, defendants were demonstrably aware of the claims brought by the plaintiff, had retained United States counsel in order to contest the similar allegations, and participated in cases through its counsel by either answering complaints, providing declarations, or filing motions to

dismiss. *U.S. v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262 (S.D.N.Y.2012); I*n re TFT-LCD (Flat Panel) Antitrust Litigation*, 270 F.R.D. 535 (N.D.Cal.2010). *Halvorssen v. Simpson*, 328 F.R.D. 30, (USDC E.D. New York 2018).

### IV. Conclusion

As demonstrated above, service of process via Letters Rogatory is not an efficient nor effective manner for serving these Defendants. Service via Letters Rogatory would be unduly burdensome on the Plaintiffs, as the process is needlessly costly and could take years to accomplish. Moreover, Rule 4(f)(3) is designed to allow courts discretion and broad flexibility to tailor the methods of service for a particular case. Rule 4(f)(3)'s alternative is not a last resort, nor is it any less favored than service under subsections (1) and (2).3.

Further, taking into consideration that these Defendants are currently actively defending three lawsuits within the Eastern District of New York, where each Defendant is represented by able and competent counsel, service on these Defendants, via counsel and via FedEx, would satisfy all due process considerations as these means are reasonably calculated to apprise these Defendants of the pendency of this action while affording these Defendants an opportunity to respond and defend.

For the foregoing reasons, Plaintiff respectfully requests this Court grant the present motion and authorize service of the Summonses, the Complaint, and all filings and discovery in this matter upon each Defendant in this action:

(1) via FedEx to Qatar Charity via at Building 18, Street 132, Zone 69, Doha, Qatar, and on Qatar National Bank at Qatar National Bank Building, Al Corniche Street, Doha, Qatar, as these addresses are designated on the Defendants' respective websites; and

(2) via email to DLA Piper LLP US attorneys John M. Hillebrecht (john.hillebrecht@dlapiper.com), Jessica A. Masella ( jessica.masella@dlapiper.com), Kevin Walsh (kevin.walsh@dlapiper.com), and Michael George Lewis (michael.lewis@dlapiper.com) on behalf of Qatar Charity and Ropes and Gray attorneys Michael G. McGovern (michael.mcgovern@ropesgray.com), Brittany Grace Norfleeet (brittany.norfleet@ropesgray.com), Douglass H Hallward-Driemeier (douglas.hallward-driemeier@ropesgray.com), and Mary Brust (mary.brust@ropesgray.com) on behalf of Qatar Charity.

By:  /s/*George A. Minski, Esq.*
George A. Minski, Esq.
FBN. 724726
**LAW OFFICES OF GEORGE A. MINSKI, P.A**.
*Co-Counsel for Plaintiffs*
2500 Hollywood Boulevard
Hollywood, FL 33020
Dade: 305-792-2200
Broward: 954-362-4214
Email: gminski@minskilaw.com
Primary email: dgomez@minskilaw.com

**PERLES LAW FIRM PC**
Steven R. Perles*
Joshua K. Perles*
816 Connecticut Ave. NW
12th Floor
Washington D.C. 20006
Telephone: 202-955-9055
*Co-Counsel for the Plaintiffs*