IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ARTHUR BARRY SOTLOFF Individually and as the Administrator of the Estate of STEVEN JOEL SOTLOFF; SHIRLEY GOLDIE PULWER, and LAUREN SOTLOFF,

 *Plaintiffs*,

v.

QATAR CHARITY and QATAR NATIONAL BANK (Q.P.S.C.),

 *Defendants*.

Case No. 9:22-cv-80726 (DMM)

**QATAR NATIONAL BANK'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS**

 Defendant Qatar National Bank (Q.P.S.C.) ("QNB"), while preserving all available defenses, including lack of personal jurisdiction and failure to state a claim upon which relief can be granted, files this memorandum in opposition to Plaintiffs' Motion for Order Authorizing Alternative Service of Process (the "Motion"), which Plaintiffs filed pursuant to Federal Rule of Civil Procedure 4(f)(3). *See* ECF No. 9. QNB files this response pursuant to the Court's order directing the same. *See* ECF No. 41.

 QNB requests that the Court deny the Motion and instead require Plaintiffs, in compliance with Rule 4, to properly serve QNB in a manner consistent with Qatari law, which, as Plaintiffs acknowledge, requires service via letters rogatory.[1]

---

[1] *See* Motion ¶ 10 ("As per USC Title 22 Foreign Relations, Chapter I Department of State, Sec 92.54, Letters Rogatory, through diplomatic channels, are mandated for formal service in all countries that are not parties to an international process treaty," and "[d]ocuments must be sent through diplomatic channels adhering to strict formal diplomatic protocol.").

1

## **PRELIMINARY STATEMENT**

Plaintiffs ask the Court to permit alternative service under Federal Rule of Civil Procedure 4(f)(3) via email to QNB's counsel and by FedEx to QNB's headquarters in Qatar. Plaintiffs make this request despite appearing to acknowledge that this method of service is prohibited under Qatari law, which instead requires service via letters rogatory. The basis for Plaintiffs' request is that serving QNB in compliance with Qatari law would be costly and slow. But this concern, even if valid, does not warrant circumventing the ordinary and legally appropriate method of attempting service before seeking leave to use a more convenient method. Plaintiffs' Motion should be denied for multiple reasons.

First, while Plaintiffs primarily advance an argument that QNB has notice of the Complaint, the Eleventh Circuit has repeatedly held that bare notice is not enough to satisfy the due process concerns undergirding the formal requirements for service under the Federal Rules.

Second, the Eleventh Circuit has made clear that "*an earnest effort* should be made to devise a method of communication that is *consistent with due process* and **minimizes offense to foreign law**." *Prewitt Enters. v. OPEC*, 353 F.3d 916, 927 (11th Cir. 2003) (quoting Fed. R. Civ. P. 4(f)(3), Notes of Advisory Comm. on Rules – 1993 Amend.). But Plaintiffs' proposed method of service is prohibited under Qatari law, and Plaintiffs' request for permission to circumvent Qatari law without first making even a reasonable attempt to properly serve QNB would *maximize*, not minimize, offense to Qatari law. Indeed, Plaintiffs' counsel in this case has successfully served QNB in compliance with Qatari law in three related actions in the Eastern District of New York (the "E.D.N.Y. Actions"),[2] and there is no basis to conclude that Plaintiffs could not do so here.

Third, Plaintiffs provide no evidence that the facts and circumstances of this case warrant the Court's exercise of its discretion to allow alternative service. They make no effort to support their claim that following proper procedure would result in undue cost. Instead, Plaintiffs argue that serving QNB via letters rogatory would cause inordinate delay, but their only evidence of delay is plainly inapposite. Plaintiffs point to delays in serving QNB in the E.D.N.Y. Actions, but there is no dispute that those delays were the result of moratoriums on transmitting letters rogatory due to the COVID-19 pandemic, which moratoriums have since expired. To the contrary, the only

---

[2] *See Force, et al. v. Qatar Charity, et al.*, No. 1:20-cv-2578 (BMC) (E.D.N.Y.); *Przewozman, et al. v. Qatar Charity, et al.*, No. 1:20-cv-6088 (NGG) (RLM) (E.D.N.Y.); *Henkin, et al. v. Qatar Charity, et al.*, No.1:21-cv-5716 (AMD) (VMS) (E.D.N.Y.).

delay here is due to Plaintiffs' own failure to commence the process to serve QNB via letters rogatory during the six months since filing the Complaint in this matter.

Because Plaintiffs have not even attempted to comply with Qatari law or establish through evidence that such compliance would be unduly expensive or cause inordinate delay, QNB asks that Plaintiffs' Motion be denied.

## **BACKGROUND**

Founded in 1964, QNB is a commercial bank incorporated in Qatar and headquartered in Qatar's capital city, Doha. QNB has subsidiaries and affiliates in Asia, Europe, and Africa, but none in the Americas (let alone in the United States).

Plaintiffs' Complaint advances primary liability and secondary liability claims under the Anti-Terrorism Act against QNB and one of QNB's many customers, Qatar Charity. Throughout the Complaint, Plaintiffs also level claims of terrorist support against the government of Qatar. *See* Compl. ¶¶ 1-2, 4, 77-79, 100, 253, 256. QNB previously filed a motion to dismiss, since mooted by the Court's order, showing that these claims lack merit. *See* ECF No. 40.

As background, Plaintiffs' counsel, who also serve as counsel for the plaintiffs in the three E.D.N.Y. Actions that Plaintiffs reference in the instant Motion, *see* Motion ¶ 12, attempted to serve QNB in the E.D.N.Y. Actions by courier mail to QNB, and later by asking the court to direct courier mail to QNB under Rule 4(f)(2)(C)(ii).[3] However, counsel for the plaintiffs in the E.D.N.Y. Actions later switched tracks after apparently realizing that their proposed method of service was "prohibited by the foreign country's law" and thus not available under Fed. R. Civ. P. 4(f)(2)(C). They instead attempted to proceed under Rule 4(f)(3) for alternative service.[4] The three judges presiding over the E.D.N.Y. Actions each declined to rule on the pending motions for alternative service and instead waited a few months until letters rogatory were properly effected, at which point QNB promptly accepted service in all three actions.[5]

---

[3] *See, e.g.*, *Force, et al. v. Qatar Charity, et al.*, No. 1:20-cv-2578 (BMC) (E.D.N.Y. Jan. 24, 2022), ECF No. 54 at 4.

[4] *See, e.g.*, *Force, et al. v. Qatar Charity, et al.*, No. 1:20-cv-2578 (BMC) (E.D.N.Y. Feb. 17, 2022), ECF No. 60 at 6.

[5] *See Force, et al. v. Qatar Charity, et al.*, No. 1:20-cv-2578 (BMC) (E.D.N.Y. Aug. 1, 2022), ECF No. 77; *Przewozman, et al. v. Qatar Charity, et al.*, No. 1:20-cv-6088 (NGG) (RLM)

Plaintiffs have yet to make any attempt to serve QNB via letters rogatory in this case, which was first filed on May 13, 2022. Instead, nearly three months later on August 10, 2022, they filed *ex parte* this motion for an order authorizing alternative service of process. The Motion, which was originally sealed, was later shared with Defendants via email on September 23, 2022, and was subsequently unsealed by this Court on October 27, 2022. Nearly six months and counting since the filing of the Complaint, Plaintiffs have yet to even commence the letters rogatory process.

## ARGUMENT

### I. PLAINTIFFS HAVE FAILED TO JUSTIFY THEIR REQUEST FOR ALTERNATIVE SERVICE.

Federal Rule of Civil Procedure 4(f)(3) permits service on a foreign defendant "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). "A district court has the sound discretion to determine 'when the particularities and necessities of a given case require alternate service of process under Rule 4(f)(3).'" *Int'l Designs Corp. v. Qingdao SeaForest Hair Prod. Co.*, No. 17-60431-CIV, 2018 WL 2364297, at *3 (S.D. Fla. Jan. 4, 2018) (quoting *U.S. Commodity Futures Trading Comm'n v. Aliaga*, 272 F.R.D. 617, 619 (S.D. Fla. 2011)). Courts, including this Court, "generally examine three factors 'in determining whether to exercise [their] discretion and permit alternative service of process.'" *Wildes v. Bitconnect Int'l PLC*, No. 9:17-cv-80086, 2018 WL 4864836, at *2 (S.D. Fla. Mar. 20, 2018) (Middlebrooks, J.) (quoting *Tracfone Wireless, Inc. v. Hernandez*, 126 F. Supp. 3d 1357, 1364 (S.D. Fla. 2015)):

> First, the Court must be satisfied that the proposed method of service is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Second, the Court must determine if the proposed method of service *minimizes offense to foreign law*. Third, the Court must determine if the *facts and circumstances warrant exercise of its discretion* under Fed. R. Civ. P. 4(f).

*Id.* (cleaned up) (emphases added); *see also Int'l Designs Corp.*, 2018 WL 2364297, at *3 (framing the third factor as a necessity inquiry under which the district court "may require the plaintiff to show that . . . the circumstances are such that the district court's intervention is necessary").

---

(E.D.N.Y. Aug. 1, 2022), ECF No. 54; *Henkin, et al. v. Qatar Charity, et al.*, No.1:21-cv-5716 (AMD) (VMS) (E.D.N.Y. Aug. 1, 2022), ECF No. 69.

4

Plaintiffs fail even to mention—much less attempt to satisfy—this controlling three-factor analysis under Rule 4(f)(3). For the reasons below, Plaintiffs have failed to satisfy any of the three. Plaintiffs fail to point to any basis for QNB's amenability to service of summons or to any authorization for service of summons on QNB, thereby failing to satisfy due process concerns. Plaintiffs' reliance on bare notice ignores that the Eleventh Circuit has rejected the assertion that notice alone satisfies due process. The Motion falls even farther short with respect to the second and third factors: Plaintiffs' proposed methods of service fail to minimize offense to foreign law because they directly violate Qatari law on service of process, and the facts and circumstances that Plaintiffs themselves emphasize throughout the Motion demonstrate that this Court's intervention is *not* necessary. Indeed, Plaintiffs' proposed methods of service risk leading to a potential judgment that is ultimately unenforceable in Qatar, which would be a far greater waste of time and resources than any incidental delay caused by proper service via letters rogatory. Beyond their failure to satisfy due process concerns, Plaintiffs' failures to satisfy the second and third factors serve as independent bases to deny the Motion.

        A.     **Bare Notice Alone Does Not Suffice to Satisfy Due Process.**

Plaintiffs' argument boils down to the assertion that "notice" to a defendant is the sole concern, but the Eleventh Circuit has rejected that view. Plaintiffs assert that alternative service is appropriate because QNB had ample notice of the Complaint. *See* Motion ¶ 32 (arguing that "as here, defendants were demonstrably aware of the claims brought by the plaintiff" and that Defendants have already retained counsel and participated in the E.D.N.Y. cases). This argument relates to the first factor of the relevant standard, which this Court has described as a "due process consideration," and which must "satisfy due process concerns." *Wildes*, 2018 WL 4864836, at *2.

In *Prewitt*, the Eleventh Circuit expressly rejected the argument that mere notice satisfies due process:

> Prewitt nonetheless suggests that we should liberally construe the formal requirements for service under the Federal Rules because OPEC received actual notice but simply chose to "ignore the whole thing." However, we find no support for such an argument. Due process under the United States Constitution requires that "before a court may exercise personal jurisdiction over a defendant, there must be *more than* notice to the defendant . . . there also must be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be *authorization* for service

5

> of summons on the defendant." In other words, an individual or entity "is not obliged to engage in litigation unless [officially] notified of the action . . . under a court's authority, by formal process."

353 F.3d at 924-25 (first quoting *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 98 (1987) (emphasis added) and then quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999)); *see also De Gazelle Grp., Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 750-51 (11th Cir. 2016) (noting that the "magistrate judge's reliance . . . on evidence showing . . . actual notice of the lawsuit was misplaced," because due process requires that "there must be more than notice to the defendant"). Other than bare notice, nowhere in the Motion do Plaintiffs point to any basis for QNB's amenability to service of summons or to any authorization for service of summons on QNB; Plaintiffs therefore fail to satisfy due process concerns.[6]

### B. Plaintiffs' Proposed Methods of Service Fail to Minimize Offense to Foreign Law Because They Directly Violate Qatari Law on Service of Process.

For the second factor in the Rule 4(f)(3) analysis, "the Court must determine if the proposed method of service minimizes offense to foreign law." *Wildes*, 2018 WL 4864836, at *2 (quoting *Tracfone*, 126 F. Supp. 3d at 1364).

Service of a court summons, by which act the court obtains authority over the party summoned (at least to adjudicate questions of jurisdiction), is an exercise of governmental power; one state government is generally prohibited from exercising sovereign power in the territory of another without its consent. *See Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 111 n.6 (2d Cir. 2001). Sovereign states often agree to such reciprocal exercises of authority by treaty, but Plaintiffs point to no such treaty here.

Plaintiffs ask this Court to authorize service upon QNB by courier mail sent to QNB's headquarters and by electronic mail to QNB's counsel, all under Federal Rule of Civil Procedure 4(f)(3). *See* Motion ¶ 2. However, Qatari law itself clearly states that "*[e]very* summons or execution *shall* be served through the police or any other authority appointed by the President of the Supreme Judicial Council," with the only carveout being for a *Qatari court* to effect service

---

[6] QNB also adopts the due process arguments advanced in Qatar Charity's response to the Motion.

on a *person* by *Qatari registered mail*.[7] As such, and as Plaintiffs themselves appear to acknowledge, Plaintiffs' proposed methods of service are prohibited under Qatari law, and Plaintiffs' request thus *maximizes* offense to applicable foreign law.[8]

Plaintiffs miss the point in arguing that they are not technically required to attempt service in a manner that complies with the foreign country's laws under Rules 4(f)(1) or 4(f)(2) before invoking Rule 4(f)(3). *See* Motion ¶ 28. They ignore that the Eleventh Circuit has held that "an *earnest effort should be made* to devise a method of communication that is *consistent with due process* and *minimizes offense to foreign law*." *Prewitt Enters.*, 353 F.3d at 927 (quoting Fed. R. Civ. P. 4(f)(3), Notes of Advisory Comm. on Rules – 1993 Amend.). Here, Plaintiffs have made no such "earnest effort" to serve QNB via letters rogatory. This is true despite the fact that Plaintiffs' counsel in this matter successfully served QNB via letters rogatory on behalf of other plaintiffs in the E.D.N.Y. Actions.[9] Under these circumstances, the Eleventh Circuit has made clear that courts cannot "read 4(f)(3) as permitting that which has already been specifically prohibited under 4(f)(2)," and that "any circumvention" of Rule 4(f)(2) by directing service under Rule 4(f)(3) would constitute an abuse of discretion by the district court. *Prewitt Enters.*, 353 F.3d at 927.

In *Prewitt*, the plaintiff attempted service on the Organization of the Petroleum Exporting

---

[7] *See* Articles 2 & 11, Qatar Civil & Commercial Procedure Law (Law No. 13 of 1990), https://www.almeezan.qa/LawArticles.aspx?LawTreeSectionID=8075&lawId=2492&language=en (emphases added). This governmental website, maintained by the Ministry of Justice under the State of Qatar, may be judicially noticed by this Court. *See Gallagher v. Philipps*, 563 F. Supp. 3d 1048, 1071 (S.D. Cal. 2021) (noting that a "court may take judicial notice of public records of governmental entities and authoritative sources of foreign law, including information posted on government websites"). Notably, in the E.D.N.Y. Actions, the same counsel first relied on this source when arguing that their attempt to serve QNB under Rule 4(f)(2)(C)(ii) was not prohibited under Qatari law, but later switched tracks to a Rule 4(f)(3) argument instead, *see supra* notes 3, 4, and Plaintiffs in this case make no attempt to argue that Qatari law does not expressly prohibit their proposed methods of service.

[8] *See* Motion ¶¶ 25, 29 (arguing that service of process "may be accomplished in contravention of the laws of the foreign country" so long as method is court-approved and "not prohibited by an international agreement"); *see also id.* ¶ 10 (recognizing that service via letters rogatory is "mandated for formal service in all countries that are not parties to an international process treaty").

[9] *See* Motion ¶¶ 18-19; *Force, et al. v. Qatar Charity, et al.*, No. 1:20-cv-2578 (BMC) (E.D.N.Y. Sept. 2, 2022), ECF No. 81; *Przewozman, et al. v. Qatar Charity, et al.*, No. 1:20-cv-6088 (NGG) (RLM) (E.D.N.Y. Sept. 2, 2022), ECF No. 58; *Henkin, et al. v. Qatar Charity, et al.*, No.1:21-cv-5716 (AMD) (VMS) (E.D.N.Y. Sept. 2, 2022), ECF No. 73.

Countries ("OPEC," headquartered in Austria), but Austrian law provided that service of legal process could not take place within OPEC headquarters "except with the express consent of, and under conditions approved by, [OPEC's] Secretary General." *Id.* at 923. Because the plaintiff's method of service (international registered mail) was therefore prohibited under Austrian law, service was not proper under Rule 4(f)(2)(C). The *Prewitt* court then addressed and rejected the plaintiff's request for alternative service under Rule 4(f)(3), concluding that, "[r]ather than minimizing offense to Austrian law, the failure to obtain OPEC's consent [to service] would constitute a substantial affront to Austrian law." *Id.* Surveying the case law, the Eleventh Circuit could "find no support permitting such a consequence in the face of Austria's direct prohibition of service on OPEC without its consent." *Id.*

In an attempt to escape this conclusion, Plaintiffs rely primarily on *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002), where the Ninth Circuit held that the plaintiff was not required to attempt service on a Costa Rican defendant by the methods enumerated in Rule 4(f)(2) before seeking relief under Rule 4(f)(3). But the Eleventh Circuit in *Prewitt* expressly distinguished *Rio* for several reasons applicable here, including, most importantly, that there was no evidence in *Rio* that the plaintiff's alternative method of service was prohibited under Costa Rican law; thus, the *Rio* court had "no need to take into account the advisory note to Fed. R. Civ. P. 4(f)(3) directing that alternative service of process should minimize offense to foreign law." *Prewitt Enters.*, 353 F.3d at 927 (citing *Rio Props.*, 284 F.3d at 1014).[10] The same holds true for the other cases upon which Plaintiffs rely, which either say nothing about whether the relevant foreign country's laws prohibit the alternative methods of service or affirmatively conclude that the foreign country did ***not*** prohibit those alternative methods.[11] These

---

[10] The *Prewitt* court also distinguished *Rio* because the *Rio* defendant had a "legitimate agent . . . in the United States" and evaded the plaintiff's attempts to physically serve the defendant. *Prewitt Enters.*, 353 F.3d at 927-28 (citing *Rio Props.*, 284 F.3d at 1014). Plaintiffs here do not claim that QNB has evaded service or that QNB has any legitimate agent in the United States.

[11] *See* Motion ¶¶ 30-31 (citing *United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 263 (S.D.N.Y. 2012) (no assessment of whether Lebanese law prohibited alternative method of service and no discussion of possible offense to Lebanese law)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 270 F.R.D. 535, 537 (N.D. Cal. 2010) (same, under Taiwanese law); *Brookshire Bros., Ltd. v. Chiquita Brands Int'l, Inc.*, No. 05-cv-21962, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007) (same, under Ecuadorian law); *TracFone Wireless, Inc. v. Distelec Distribuciones Electronicas, S.A. de DV*, 268 F.R.D. 687, 690 (S.D. Fla. 2010) (allowing alternative service where

cases have no application here because Qatari law in fact prohibits Plaintiffs' proposed alternative method of service. *See, e.g.*, *Prewitt Enters.*, 353 F.3d at 927-28 & n.21 (citing *Mayoral-Amy v. BHI Corp.*, 180 F.R.D. 456 (S.D. Fla. 1998), where the district court declined to allow service under Fed. R. Civ. P. 4(f)(3) because the proposed method of service contravened Belize law).

In sum, where Plaintiffs' method of service is *prohibited* by Qatari law, service other than by letters rogatory or through the relevant Qatari authority risks considerable offense to a foreign sovereign. Concerns of international comity are especially heightened where, as here, the Complaint makes baseless allegations of misconduct against the government of Qatar, *see* Compl. ¶¶ 1-2, 4, 77-79, 100, 253, 256, notwithstanding the United States government's recent reaffirmation of Qatar as a "major non-NATO ally."[12] Thus, while QNB believes that authorization of alternative service under Rule 4(f)(3) would constitute an abuse of discretion, *see Prewitt Enters.*, 353 F.3d at 928, to the extent that such authorization falls within the Court's discretion, the Court should decline to do so because it would constitute a "substantial affront" to Qatari law, *id.* at 927.

### C. The Court's Intervention Is Not Necessary.

Plaintiffs also fail to satisfy the third factor of the Rule 4(f)(3) analysis, which requires Plaintiffs to show that "the district court's intervention is necessary." *See Int'l Designs Corp.*, 2018 WL 2364297, at *3; *see also Wildes*, 2018 WL 4864836, at *2 (quoting *Tracfone*, 126 F. Supp. 3d at 1364) ("[T]he Court must determine if the facts and circumstances warrant exercise of its discretion . . . ."). This factor instead cuts strongly in QNB's favor.

As discussed, counsel has *already* successfully served QNB by letters rogatory on behalf

---

defendant failed to provide any evidence that foreign country's law prohibited the proposed method of service)).

[12] C. Todd Lopez, *'Major Non-NATO Ally' Designation Will Enhance U.S., Qatar Relationship*, U.S. Dep't of Defense (Jan. 31, 2022), https://www.defense.gov/News/News-Stories/Article/Article/2917336/major-non-nato-ally-designation-will-enhance-us-qatar-relationship/ ("According to the U.S. State Department, a designation as major non-NATO ally, or MNNA, serves as 'a powerful symbol of the close relationship the United States shares with those countries and demonstrates our deep respect for the friendship for the countries to which it is extended.'"). This Court can take "judicial notice of information publicly available from an official government website," such as the U.S. Department of Defense website cited here. *See Setai Hotel Acquisition, LLC v. Miami Beach Luxury Rentals, Inc.*, No. 16-21296-CIV, 2017 WL 3503371, at *7 (S.D. Fla. Aug. 15, 2017).

of plaintiffs in the *three* separate litigations in E.D.N.Y. *See supra* note 9. Notwithstanding this reality, Plaintiffs represent that "[s]ervice of process via Letters Rogatory would be unduly burdensome on the Plaintiffs." Motion at 10. But "the fact that service of process . . . is expensive and time consuming is generally not sufficient to demonstrate that the facts and circumstances necessitate the district court's intervention." *Caballero v. Ejercito De Liberacion Nacional*, No. 18-cv-25337 (KMM), 2019 WL 11505368, at *2 (S.D. Fla. Apr. 3, 2019) (internal quotation marks omitted)). Plaintiffs' counsel are obviously more than capable of achieving proper service on QNB without the Court's intervention, as they have done on three occasions already, and thus there is no need to give substantial affront to Qatar's sovereign interests.

Plaintiffs nonetheless argue that properly serving QNB would be needlessly expensive and slow. Motion at 10. Plaintiffs make no attempt to demonstrate that service via letters rogatory would be unduly expensive, which courts have required in the very cases upon which Plaintiffs rely. *See, e.g.*, Motion ¶ 32 (citing *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 270 F.R.D. at 537 (noting that plaintiff's counsel provided estimates of various costs they would incur by attempting service by letters rogatory)).[13]

Instead, the only evidence Plaintiffs cite to is the fact that, in the E.D.N.Y. Actions, "it took over two years from the filing of the earliest complaint" for the plaintiffs in those actions to serve QNB. Motion ¶ 19. This is misleading in light of the full context: it took a little less than eight months after plaintiffs in the E.D.N.Y. Actions moved for the issuance of letters rogatory before QNB was served.[14] Further, the earliest of the E.D.N.Y. Actions was filed in in June 2020, in the early stages of the COVID-19 pandemic. *See* Motion ¶ 19. The same counsel acknowledged in those cases that, "as a result of the COVID-19 pandemic, the U.S. Department of State[] . . . ceased

---

[13] Nor can Plaintiffs show that translating the Complaint into Arabic would be costly in this case, particularly where Plaintiffs' Complaint copies nearly word-for-word significant portions of the complaints in the E.D.N.Y. Actions. *Compare, e.g.*, Compl. ¶¶ 128-211 *with Henkin*, ECF No. 1 ¶¶ 227-314.

[14] Compare *Force, et al. v. Qatar Charity, et al.*, No. 1:20-cv-2578 (BMC) (E.D.N.Y. Dec. 1, 2021), ECF No. 37; *Przewozman, et al. v. Qatar Charity, et al.*, No. 1:20-cv-6088 (NGG) (RLM) (E.D.N.Y. Dec. 1, 2021), ECF No. 31; *Henkin, et al. v. Qatar Charity, et al.*, No.1:21-cv-5716 (AMD) (VMS) (E.D.N.Y. Dec. 1, 2021), ECF No. 33 *with Force, et al. v. Qatar Charity, et al.*, No. 1:20-cv-2578 (BMC) (E.D.N.Y. Aug. 1, 2022), ECF No. 77; *Przewozman, et al. v. Qatar Charity, et al.*, No. 1:20-cv-6088 (NGG) (RLM) (E.D.N.Y. Aug. 1, 2022), ECF No. 54; *Henkin, et al. v. Qatar Charity, et al.*, No.1:21-cv-5716 (AMD) (VMS) (E.D.N.Y. Aug. 1, 2022), ECF No. 69.

transmitting letters rogatory . . . for more than a year during the 2020-2021 period." *See Force*, ECF No. 54 at 4; *see also Henkin*, ECF No. 61 at 59 ("Plaintiffs will ultimately succeed in completing the letters rogatory service that has been much delayed as a result of pandemic-related issues impacting that process."). That moratorium has now ended, *see Force*, ECF No. 54 at 4, and Plaintiffs do not even mention the pandemic or any other reasons to believe the letters rogatory process will face undue or excessive delays.

In any event, if there is any source of delay, it is from Plaintiffs themselves for not commencing the letters rogatory process from the inception of this action nearly six months ago on May 13, 2022. *See* ECF No. 1. In *Codigo Music, LLC v. Televisa S.A. de C.V.*, No. 15-cv-21737, 2017 WL 4346968, at *10 n.7 (S.D. Fla. Sept. 29, 2017), the court explained of the plaintiffs' request for alternative service on a Mexican corporation under Rule 4(f)(3), "As to any suggestion by the Plaintiffs that litigation of this matter will be greatly delayed if Plaintiffs are not permitted to serve Defendant through either Counsel or substituted service, it is curious that during the pendency of the Motion at bar there is no indication that Plaintiffs attempted to resubmit their request for service on the Defendant to the Central Mexican Authority." Likewise here, Plaintiffs themselves have contributed to their complained-of delay by attempting to circumvent proper service of process via letters rogatory.

Moreover, none of the other circumstances that courts in this District have used to justify alternative service under Rule 4(f)(3) are present here; for example, there is "no evidence that the Defendant in this case is evading service, that the Defendant's address is unknown, that there is any great urgency present in the case, and there has been no showing that service is particularly difficult." *Codigo Music*, 2017 WL 4346968, at *10.

Finally, Plaintiffs' proposed methods of service risk leading to a potential judgment that is ultimately unenforceable in Qatar, which would be a far greater waste of the Court's and the parties' time and resources than any incidental delay caused by proper service via letters rogatory. *See, e.g.*, *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, No. 11-cv-1529 (KMW), 2014 WL 684831, at *2 (S.D.N.Y. Feb. 21, 2014) (noting that the case had a "long and somewhat tortured history" because "Plaintiff had found that the judgment was unenforceable against Defendant in Brazil because Plaintiff had not served process by letters rogatory, as required by Brazilian law" and therefore "needed to serve Defendant by letters rogatory in a new action").

## **CONCLUSION**

For the foregoing reasons, QNB respectfully submits that the Court should deny Plaintiffs' Motion for Order Authorizing Alternative Service of Process.

Dated: November 11, 2022					Respectfully submitted,

/s/ *Edward M. Mullins*
Edward M. Mullins
**REED SMITH LLP**
200 South Biscayne Boulevard, 26th Floor
Miami, Florida 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299
emullins@reedsmith.com


Michael G. McGovern (*pro hac vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
michael.mcgovern@ropesgray.com

Douglas Hallward-Driemeier (*pro hac vice*)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Telephone: (202) 508-4600
Facsimile: (202) 508-4650
douglas.hallward-driemeier@ropesgray.com

*Counsel for Defendant Qatar National Bank (Q.P.S.C.)*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 11, 2022, a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record.

*/s/ Edward M. Mullins*
Edward M. Mullins
