**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

| | |
|---|---|
| ARTHUR BARRY SOTLOFF Individually and as Administrator of the Estate of STEVEN JOEL SOTLOFF; SHIRLEY GOLDIE PULWER, and LAUREN SOTLOFF, <br><br>        Plaintiffs,<br><br>  v.<br><br>QATAR CHARITY, a Foreign Non-Profit Organization and QATAR NATIONAL BANK (Q.P.S.C.), a Foreign Multinational Commercial Bank,<br><br>        Defendants. | Case No. 9:22-cv-80726 (DMM) |

**DEFENDANT QATAR CHARITY'S MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS'** *EX PARTE* **MOTION FOR AN ORDER
AUTHORIZING ALTERNATIVE SERVICE UPON THE FOREIGN DEFENDANTS**

**DLA PIPER LLP (US)**
Harout J. Samra
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Tel:  305.423.8534
E-mail:  harout.samra@dlapiper.com

John M. Hillebrecht*
Kevin Walsh*
Jessica A. Masella*
Lane Earnest McKee*
Michael G. Lewis*
    *Pro Hac Vice*
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Tel:  212.335.4500
E-mail:  john.hillebrecht@us.dlapiper.com
         kevin.walsh@us.dlapiper.com
         jessica.masella@us.dlapiper.com
         lane.mckee@us.dlapiper.com
         michael.lewis@us.dlapiper.com

*Counsel for Defendant Qatar Charity*

**TABLE OF CONTENTS**

Page

**ARGUMENT** ............................................................................................................................. 1

    I.    PLAINTIFFS FAIL TO MEET THE STANDARD FOR ALTERNATIVE SERVICE UNDER RULE 4(f)(3). .................................................................................................... 1

        A.    Plaintiffs Cannot Satisfy the Requirements of Due Process. ........................................ 2

        B.    Plaintiffs' Request for Service of Process Are by Means Not Permitted by Qatari Law. ................................................................................................................................... 4

            1.    Service of Process by FedEx Is Not Permitted by Qatari Law. ............................... 7

            2.    Service of Process by E-mail Is Not Permitted by Qatari Law ................................ 7

        C.    Plaintiffs Cannot Demonstrate That the Facts and Circumstances Warrant Exercise of This Court's Discretion. ............................................................................................... 8

    II.    PLAINTIFFS' REQUESTED RELIEF DEFIES THE LIMITS OF DUE PROCESS..... 11

**CONCLUSION** ........................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                      Page(s)

*Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings*,
    268 F.3d 103 (2d Cir. 2001)..................................................................................................5

*Berdeaux v. OneCoin Ltd.*,
    561 F. Supp. 3d 379 (S.D.N.Y. 2021)............................................................................12, 13

*Caballero v. Ejercito De Liberacion Nacional*,
    2019 WL 11505368 (S.D. Fla. Apr. 3, 2019) .....................................................................10

*Chanel, Inc. v. Lin*,
    2009 WL 1034627 (S.D. Fla. Apr. 16, 2009) ......................................................................2

*Chanel, Inc. v. Zhixian*,
    2010 WL 1740695 (S.D. Fla. Apr. 29, 2010) ......................................................................7

*Codigo Music v. Televisa S.A.*,
    2017 WL 4346968 (S.D. Fla. Sept. 29, 2017) ..................................................................3, 7

*Commodity Futures Trading Comm'n v. Fingerhut*,
    2020 WL 4499198 (S.D. Fla. May 29, 2020) .............................................................. passim

*De Gazelle Grp. v. Tamaz Trading Establishment*,
    817 F.3d 747 (11th Cir. 2016) ...........................................................................................1, 3

*DirectTV Latin Am. v. Park 610, LLC*,
    691 F. Supp. 2d 405 (S.D.N.Y. 2012)................................................................................13

*Force, et al. v. Qatar Charity, et al.*,
    No. 1:20-cv-2578 (E.D.N.Y. Dec. 1, 2021)....................................................................9, 11

*Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries*,
    107 F. Supp. 3d 134 (D.D.C. 2015) ...............................................................................1, 10

*Henkin, et al. v. Qatar Charity, et al.*,
    No. 1:21-cv-5716 (E.D.N.Y. Dec. 1, 2021).........................................................................9

*Henkin, et al. v. Qatar Charity, et al.*,
    No. 1:21-cv-5716 (E.D.N.Y. May 3, 2022).........................................................................9

*Henkin, et al. v. Qatar Charity, et al.*,
    No. 1:21-cv-5716 (E.D.N.Y. Sept. 2, 2022) ......................................................................11

*Int'l Designs Corp. v. Qingdao SeaForest Hair Prod. Co.*,
    2018 WL 2364297 (S.D. Fla. Jan. 4, 2018) ............................................................2, 8, 9, 10

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .................................................................................................................2

*Prewitt Enters. v. OPEC*,
   353 F.3d 916 (11th Cir. 2003) ....................................................................................... *passim*

*Przewozman, et al. v. Qatar Charity, et al.*,
   No. 1:20-cv-6088 (E.D.N.Y. Dec. 1, 2021) .........................................................................9, 11

*Universal Trading & Inv. v. Tymoshenko*,
   2012 WL 6186471 (S.D.N.Y. Dec. 12, 2012) ..........................................................................13

*Vasquez v. Hong Kong & Shanghai Banking Corp.*,
   477 F. Supp. 3d 241 (S.D.N.Y. 2020) .......................................................................................13

*Wildes v. Bitconnect Int'l PLC*,
   2018 WL 4864836 (S.D. Fla. Mar. 20, 2018) (Middlebrooks, J.) ....................................2, 3, 4

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) .................................................................................................................11

**Statutes & Other Authorities**

CONSULAR AFFAIRS, *Qatar Judicial Assistance Information*,
   https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-
   Information/Qatar.html; ............................................................................................................5

FED. R. CIV. P. 4(f) ..............................................................................................................................3, 9

FED. R. CIV. P. 4(h) ...................................................................................................................................9

*'Major Non-NATO Ally' Designation Will Enhance U.S., Qatar Relationship*,
   U.S. Dep't of Defense (Jan. 31, 2022), https://www.defense.gov/News/News-
   Stories/Article/Article/2917336/major-non-nato-ally-designation-will-
   enhance-us-qatar-relationship/ ..................................................................................................5

Defendant Qatar Charity opposes Plaintiffs' *Ex Parte* Motion for an Order Authorizing Alternative Service (ECF No. 9) for the following reasons.[1]

## ARGUMENT[2]

As Plaintiffs themselves acknowledge, pursuant to federal law "Letters Rogatory, through diplomatic channels, are mandated for formal service in all countries that are not parties to an international process treaty" and the necessary documents "must be sent through diplomatic channels adhering to strict formal protocol." (ECF No. 9 ("Mot.") at 3). While Federal Rule of Civil Procedure 4(f)(3) allows for alternative service in certain limited circumstances, Plaintiffs have not come close to satisfying the standard for obtaining such relief.

### I. PLAINTIFFS FAIL TO MEET THE STANDARD FOR ALTERNATIVE SERVICE UNDER RULE 4(f)(3).

Rule 4(f)(3) allows a party to effect service of process "by other means not prohibited by international agreement, as the court orders." FED. R. CIV. P. 4(f)(3). It also requires that a plaintiff "obtain prior court approval for the alternative method of serving process." *De Gazelle Grp. v. Tamaz Trading Establishment*, 817 F.3d 747, 751 (11th Cir. 2016) (quotation omitted). A plaintiff seeking the Court's authorization to effect service via an alternative method pursuant to Rule 4(f)(3) "bears the burden of demonstrating the validity of its proposed alternative method of service." *Freedom Watch, Inc. v. Org. of Petroleum Exporting Countries*, 107 F. Supp. 3d 134, 136 (D.D.C. 2015).

---

[1] Qatar Charity does not address Plaintiffs' arguments as to personal jurisdiction here but reserves the right to do so on any motion to dismiss. (*See* Mot. ¶ 7).

[2] At the outset, Qatar Charity notes that Plaintiffs refer to "CPLR § 302" as a basis for jurisdiction over the defendants in this action. (Mot. ¶ 7). This appears to be an errant reference to New York's long-arm statute, which has no bearing on this case and provides this Court with no basis to exercise jurisdiction over Qatar Charity.

It is in the District Court's discretion to determine when the particularities of a case necessitate alternative service of process under Rule 4(f)(3). *Int'l Designs Corp. v. Qingdao SeaForest Hair Prod. Co.*, 2018 WL 2364297, at *3 (S.D. Fla. Jan. 4, 2018). Courts in this Circuit typically look to three factors when evaluating such an application:

> "First, the Court must be satisfied that the proposed method of service is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections . . . Second, the Court must determine if the proposed method of service minimizes offense to foreign law . . . Third, the Court must determine if the facts and circumstances warrant exercise of its discretion under Fed. R. Civ. P. 4(f)."

*Wildes v. Bitconnect Int'l PLC*, 2018 WL 4864836, at *2 (S.D. Fla. Mar. 20, 2018) (Middlebrooks, J.) (quoting *Tracfone Wireless, Inc. v. Hernandez*, 126 F. Supp. 3d 1357, 1364 (S.D. Fla. 2015)). Plaintiffs cannot satisfy any of these three requirements on the facts currently before this Court. We address each in turn.

### A.     Plaintiffs Cannot Satisfy the Requirements of Due Process.

As the first prong of the prescribed analysis recognizes, the Court's discretion is subject to Constitutional protections—including that of due process. *See Chanel, Inc. v. Lin*, 2009 WL 1034627, at *2 (S.D. Fla. Apr. 16, 2009) ("[i]n exercising its discretion under Rule 4(f)(3), the Court is limited to approving a method of service that fulfills due process requirements"); *Wildes*, 2018 WL 4864836, at *2 ("[t]he first factor is a due process consideration").

Due process requires that the method of service be one that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Prewitt Enters. v. OPEC*, 353 F.3d 916, 921 (11th Cir. 2003) ("[a] court is required to have personal jurisdiction under the Due Process Clauses of the Fifth

2

and Fourteenth Amendments to the U.S. Constitution 'as a matter of individual liberty' so that 'the maintenance of the suit . . . [does] not offend 'traditional notions of fair play and substantial justice'") (citation omitted).  This Circuit has pointed to the Rule 4 Advisory Notes' instruction that "*an earnest effort* should be made to devise a method of communication that is *consistent with due process* and *minimizes offense to foreign law*."  *Prewitt Enters.*, 353 F.3d at 927 (emphases in original) (quoting FED. R. CIV. P. 4(f)(3) advisory committee's note to 1993 amendment).  Plaintiffs make no such effort, and the facts and circumstances here differ markedly from those cases in this District in which such relief has been granted.

    Even if this Court believes that Plaintiffs' proposed methods of service would provide Qatar Charity with notice of this suit, precedent has established that that is not enough, and that this is more than elevating form over substance.  Plaintiffs' assertion that service via FedEx to Qatar Charity in Doha and e-mail to Qatar Charity's counsel is the "most reliable means of providing [Qatar Charity] with notice of this action" (Mot. at 2–3) departs from the procedures of Rule 4(f).  "[T]he Eleventh Circuit has stressed the need for formal service of process despite actual notice of an action by a defendant."  *Codigo Music v. Televisa S.A.*, 2017 WL 4346968, at *12 (S.D. Fla. Sept. 29, 2017) (denying service by e-mail on domestic counsel because "mere notice" was insufficient to comply with the dictates of Rule 4); *Commodity Futures Trading Comm'n v. Fingerhut*, 2020 WL 4499198, at *3 (S.D. Fla. May 29, 2020) (plaintiff failed to establish that service by e-mail on defendants' counsel would comport with due process and constitute official notice of the action by formal process, noting that fact that those defendants "may have notice of this action is not enough"); *Tamaz Trading*, 817 F.3d at 750-51 ("actual notice … does not confer personal jurisdiction on a defendant").  As discussed below, this is

3

more than pedantic formalism; instead, it flows from weighty concerns of international comity and a salutary desire to "minimize[ ] offense to foreign law." *Wildes*, 2018 WL 48648361, at *2.

Lastly, this Court has found that a request to serve process by e-mailing defendants' counsel "is particularly concerning [where] counsel has only made appearances for the limited purpose of contesting service and jurisdiction." *Fingerhut*, 2020 WL 4499198, at *2. Like the defendants' counsel in *Fingerhut*, "there is no indication" that counsel for Qatar Charity is authorized to accept service on behalf of Qatar Charity (and it is not). *Fingerhut*, 2020 WL 4499198, at *2. Instead, counsel for Qatar Charity has only appeared "for the limited purpose of contesting service and jurisdiction," just as counsel for Mr. Fingerhut did. That Qatar Charity has previously been sued in New York and its counsel appeared in those actions asserting challenges to *that* Court's jurisdiction (*see* Mot. at 2, 4, 10) does not otherwise absolve Plaintiffs of their obligation to make a *prima facie* showing of the validity of their proposed alternative method of service or vitiate Qatar Charity's constitutional protections against being haled into Court in a foreign forum with which it has not had any contacts (such as Florida).

### B. Plaintiffs' Request for Service of Process Are by Means Not Permitted by Qatari Law.

As reflected in the second requirement articulated in *Wildes*, the Eleventh Circuit has previously instructed that courts should try to "minimize[ ] offense to foreign law" when considering motions for alternative service pursuant to Rule 4(f)(3). *Prewitt,* 353 F.3d at 927-28; *see also* Declaration of Harout J. Samra in Support of Opposition to Plaintiffs' *Ex Parte* Motion for an Order Authorizing Alternative Service Upon the Foreign Defendants ("Samra Decl."), Ex. 2 (*Schrier v. Qatar Islamic Bank*, No. 20-cv-60075, Slip Op. (S.D. Fla. Mar. 11, 2021)) at 5 (recognizing same). Plaintiffs make no attempt to demonstrate that service on Qatar Charity via

4

either FedEx or e-mail comports with Qatari law, as is their burden. Nor can they—because neither does.

Generally, one government is prohibited from exercising sovereign power in the territory of another without its consent. This principle applies to service of a court summons, by which act the court obtains authority over the party summoned, at least to adjudicate questions of jurisdiction. *See Att'y Gen. of Can. v. R.J. Reynolds Tobacco Holdings*, 268 F.3d 103, 111 n.6 (2d Cir. 2001). Although sovereign states can agree to such reciprocal exercises of authority by treaty, Plaintiffs do not point to a treaty here.[3]

Plaintiffs' proposed methods of service are prohibited by Qatari law and would thus undoubtedly constitute a "substantial affront" to Qatari law. *See Prewitt Enters.*, 353 F.3d at 927 ("[r]ather than minimizing offense to Austrian law, the failure to obtain . . . consent would constitute a substantial affront to [the foreign] law" where the plaintiff attempted to serve the defendant "under Fed. R. Civ. P. 4(f)(3), even if the service is contrary to the laws of Austria"). Thus, the instant motion and our opposition to it is much more than an exercise in substance-less formality; it raises significant issues of international comity in the context of one of this country's most significant allies. The United States government recently reaffirmed Qatar as a "major non-NATO ally." *See* C. Todd Lopez, *'Major Non-NATO Ally' Designation Will Enhance U.S., Qatar Relationship*, U.S. Dep't of Defense (Jan. 31, 2022),

---

[3] Plaintiffs do not point to any international process treaty to which Qatar is party, as QNB discusses in their opposition to the Motion. Nor can they, as Qatar is party to no such reciprocal treaty with the United States. *See* U.S. DEPARTMENT OF STATE – BUREAU OF CONSULAR AFFAIRS, *Qatar Judicial Assistance Information*, https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Qatar.html; *see also*, Samra Decl., Ex. 2 (*Schrier*, Slip Op.) at 5 ("According to the U.S. Department of State's website, as well as viewing the signatories of both treaties, Qatar is not a signatory to either the Hague Service Convention or the Inter-American Convention on Letters Rogatory.").

5

https://www.defense.gov/News/News-Stories/Article/Article/2917336/major-non-nato-ally-designation-will-enhance-us-qatar-relationship/ ("According to the U.S. State Department, a designation as major non-NATO ally, or MNNA, serves as 'a powerful symbol of the close relationship the United States shares with those countries and demonstrates our deep respect for the friendship for the countries to which it is extended.'"). The order Plaintiffs seek could be construed as a thumb in the eye to this important ally (particularly, as discussed below, given the allegations in the Complaint against the Qatari government itself).

Plaintiffs' proposed alternative method of serving Qatar Charity is particularly egregious here, where both components of the contemplated service—FedEx on the charity in Qatar and e-mail on its counsel in New York—would not only violate Qatari law, but would also fundamentally contravene the framework of the Federal Rules. While Rule 4(f)(3) grants the court discretion to order alternative means of service, Plaintiffs here seek to entirely circumvent the permissible means of serving a foreign entity under Rule 4, claiming only that it will be unduly burdensome for them to do so. Plaintiffs have made no attempt to serve Qatar Charity by any means other than DHL, which is not a permissible method of service under Qatari law. Meanwhile, Plaintiffs themselves admit that a recognized method of serving Qatar Charity (by Letters Rogatory) not only exists but has been successfully used by Plaintiffs in three different actions. Plaintiffs have not even attempted to comply with these requirements. *See Convergen*, 2020 WL 4038353, at *5 ("the moving party must make some showing of the need for judicial intervention").

Rather than employ the required method here, Plaintiffs would have this Court fashion an alternative that they hope might be quicker or cheaper. But this is not what Rule 4 is concerned with. Due process does not permit a plaintiff to bootstrap service of process in the method

6

contemplated by Plaintiffs—via e-mail to counsel that have appeared on Qatar Charity's behalf to challenge jurisdiction in an unrelated action in a different state and via FedEx in violation of Qatari law. The facts and circumstances of this action can lead to no other conclusion than that allowing such service "would constitute a clear abuse of discretion." *Prewitt*, 353 F.3d at 928.

1. *Service of Process by FedEx Is Not Permitted by Qatari Law.*

Qatari law explicitly states that "[e]very notification or enforcement must be made by service through the Police or any authority designated by the Chief of the Supreme Judiciary Council."[4] Only a Qatari court can effect service by registered mail.[5] Plaintiffs' request—to effect service on Qatar Charity, in Doha, by FedEx—would violate this explicit limitation.

2. *Service of Process by E-mail Is Not Permitted by Qatari Law.*

It is true that "[u]nder certain circumstances, courts have allowed service by e-mail." *Chanel, Inc. v. Zhixian*, 2010 WL 1740695, at *3 (S.D. Fla. Apr. 29, 2010). However, to serve a foreign entity through e-mail, the foreign government's law must allow it. As stated above, Qatari law does not permit service of process by e-mail.[6] Any attempt by Plaintiffs to effect service of process by e-mail would thus violate its mandates.

Additionally, Plaintiffs' request to effectuate service of process by e-mail to Qatar Charity's ***counsel*** should be denied. Courts in this district have required a party to have designated or authorized its counsel to accept service on its behalf. *See, e.g.*, *Codigo Music*, 2017 WL 4346968, at *10 (e-mail service on counsel not warranted where "there is no indication that Defendant's counsel has been designated to accept process on the Defendant's behalf"); *Fingerhut*, 2020 WL 4499198, at *2 (rejecting motion to serve defendants' counsel where "there

---

[4] *See* Samra Decl., Ex. 1, Article 2.
[5] *See* Samra Decl., Ex. 1, Article 11.
[6] *See* Samra Decl., Ex. 1, Articles 2 & 11.

7

is no indication that counsel . . . are authorized to accept service on [defendants'] behalf"). Qatar Charity has not made such a designation here.

### C. Plaintiffs Cannot Demonstrate That the Facts and Circumstances Warrant Exercise of This Court's Discretion.

Finally, Plaintiffs fail to acknowledge that, before permitting alternative service under Rule 4(f)(3), a district court "may require the plaintiff to show that they have reasonably attempted to effectuate service on defendant and that *the circumstances are such that the district court's intervention is necessary* to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." *Int'l Designs Corp.*, 2018 WL 2364297, at *3 (emphasis added) (internal quotation marks omitted).

Courts in the Southern District of Florida "[t]ypically . . . permit alternate service 'only where the defendant's foreign address is unknown; the defendant has successfully evaded service; [or] failure to permit alternate service will result in unduly long delays in litigation.'" *Fingerhut*, 2020 WL 4499198, at *2 (quoting *Int'l Designs Corp.*, 2018 WL 2364297, at *3); *see also* Samra Decl., Ex. 2 (*Schrier*, Slip Op.) at 5. Additionally, courts in this District are reluctant to allow such alternative service unless the plaintiff is able to show that he has "reasonably attempted to effectuate service on defendant and that the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." *Int'l Designs Corp.*, 2018 WL 2364297, at *3.

Plaintiffs do not purport to, and cannot, satisfy their burden as to any of these three possible bases for permitting alternative service. *First*, Plaintiffs are well aware of Qatar Charity's address. It is listed in the Motion as the destination for their proposed service via FedEx. (Mot. at 10 ("Qatar Charity [ ] at Building 18, Street 132, Zone 69, Doha, Qatar")). It

8

could not credibly be argued that "the defendant's foreign address is unknown" and Plaintiffs, to their credit, do not attempt to do so. *Fingerhut*, 2020 WL 4499198, at *2.

*Second*, Plaintiffs do not suggest that Qatar Charity has evaded any prior efforts to effect service of process. Indeed, Plaintiffs' only attempt to effect service on Qatar Charity was made via DHL in Doha, Qatar. (*See* Summons Returned Unexecuted as to Qatar Charity (ECF No. 43)). There is no suggestion that this attempt failed due to any malfeasance on the part of Qatar Charity (of which there was none). Even if that delivery had been successful, it would have nonetheless failed to satisfy the requirements of the Federal Rules. *See* FED. R. CIV. P. 4(h), (f).

*Third*, Plaintiffs have "not show[n] that severe delay would result" absent alternative service. Samra Decl., Ex. 2 (*Schrier*, Slip Op.) at 6. Instead, they offer only a "general assertion that service via" Letters Rogatory might "take years to accomplish." *Fingerhut*, 2020 WL 4499198, at *2; Mot. at 10. This is insufficient to satisfy Plaintiffs' burden of demonstrating the necessity of this Court's intervention. *See Int'l Designs Corp.*, 2018 WL 2364297, at *3 (declining to order service by alternative means where the plaintiff did not show "that any great urgency exist[ed]"). Furthermore, and notably, Plaintiffs never assert that they have even attempted to begin the Letters Rogatory process, six months after filing the Complaint. While Plaintiffs note "[i]n the EDNY actions it took over two years . . . for defendant Qatar National Bank to receive service by letters rogatory" (Mot. at 5), in reality Qatar Charity was served less than 8 months after plaintiffs moved for the issuance of Letters Rogatory. *See Przewozman, et al. v. Qatar Charity, et al.*, No. 1:20-cv-6088, ECF No. 31 (E.D.N.Y. Dec. 1, 2021); *Henkin, et al. v. Qatar Charity, et al.*, No. 1:21-cv-5716, ECF No. 33 (E.D.N.Y. Dec. 1, 2021); *Force, et al. v. Qatar Charity, et al.*, No. 1:20-cv-2578, ECF No. 37 (E.D.N.Y. Dec. 1, 2021). Furthermore, Plaintiffs omit any mention that the primary cause for the delay there was a COVID-related

9

moratorium on the transmission of Letters Rogatory, which is no longer in effect. We are aware of nothing that would similarly obstruct Plaintiffs' use of the requisite Letters Rogatory process. *See Force*, ECF No. 54 at 4 ("as a result of the COVID-19 pandemic, the U.S. Department of State[] . . . ceased transmitting letters rogatory . . . for more than a year during the 2020-2021 period"); *Henkin*, ECF. No. 61 at 59 ("[p]laintiffs will ultimately succeed in completing the letters rogatory service that has been much delayed as a result of pandemic-related issues impacting that process").

Plaintiffs plainly fail to satisfy the factors discussed above. The words of Judge Moreno in *Int'l Designs Corp.* resonate in this case:

> Here, there is no evidence that SeaForest's address is unknown, that SeaForest is evading service, or that any great urgency exists. Further, Plaintiffs have not shown that service is particularly difficult. Rather, although Plaintiffs have known SeaForest's Chinese address since at least August 2016, they have not indicated that they have attempted to submit a request for service to the Chinese Central Authority, even during the nearly six-month pendency of this motion.

2018 WL 2364297, at *4.

Without addressing why service via FedEx and e-mail is warranted on these facts, Plaintiffs make much of the fact that as a general proposition service via Rule 4(f)(3) "is not a last resort, not is it any less favored than service under subsections (1) and (2)." (Mot. at 10). This does not, however, speak to the validity of Plaintiffs' proposed method of service or any prior effort to effect service on Qatar Charity in this particular case, as is required. *See Freedom Watch*, 107 F. Supp. 3d at 136; *Int'l Designs Corp.*, 2018 WL 2364297, at *3.

Instead, Plaintiffs offer a conclusory argument that the required Letters Rogatory are "not an efficient nor effective manner for serving these Defendants" and "would be unduly burdensome on the Plaintiffs." (Mot. at 10). However, as courts in this District have regularly

10

noted, "the fact that service of process . . . is expensive and time consuming is generally not sufficient to demonstrate that the facts and circumstances necessitate the district court's intervention." *Caballero v. Ejercito De Liberacion Nacional*, 2019 WL 11505368, at *2 (S.D. Fla. Apr. 3, 2019) (internal quotation marks omitted). Any purported burden on Plaintiffs thus is irrelevant to the Court's analysis and pales in comparison to the burden that would be placed on Qatar Charity—a foreign entity with no U.S. contacts—were it forced to appear before this Court to defend against Plaintiffs' facially insufficient allegations.

Furthermore, and as previously articulated, Plaintiffs' counsel has already successfully served Qatar Charity by Letters Rogatory in three separate litigations in the Eastern District of New York.[7] Plaintiffs in these proceedings have thus proven not once, not twice, but three times that they can achieve proper service without the Court's intervention, and without undue delay.

## II. Plaintiffs' Requested Relief Defies the Limits of Due Process.

Even were this Court to find that Plaintiffs have satisfied their burden under Rule 4(f)(3), which they have not, it fundamentally strains the bounds of Constitutional due process to allow Plaintiffs to circumvent the Letters Rogatory procedure and drag Qatar Charity, ***a foreign entity with no contacts with the United States***, into this action. These jurisdictional deficiencies in Plaintiffs' complaint counsel against the exercise of this Court's discretion—which would serve only to delay the inevitable.

As noted above, the due process protections of personal jurisdiction reinforce the limits of the judiciary's authority by requiring that a defendant itself have contacts with the forum sufficient that it should "reasonably anticipate being haled into court" there. *World-Wide Volkswagen Corp.*

---

[7] *See* Mot. at 5; *Force, et al. v. Qatar Charity, et al.*, No. 1:20-cv-2578 (BMC) (E.D.N.Y. Sept. 2, 2022), ECF No. 81; *Przewozman, et al. v. Qatar Charity, et al.*, No. 1:20-cv-6088 (NGG) (RLM) (E.D.N.Y. Sept. 2, 2022), ECF No. 58; *Henkin, et al. v. Qatar Charity, et al.*, No. 1:21-cv-5716 (AMD) (VMS) (E.D.N.Y. Sept. 2, 2022), ECF No. 73.

*v. Woodson*, 444 U.S. 286, 297 (1980). The Complaint does not allege *any* contact with Florida by Qatar Charity. The Complaint's only allegations of connections between Qatar Charity and the United States are allegations that dollar-denominated Qatar Charity transactions, including at least one purport wire transfer to a purported "fraudulent charity" that Plaintiffs do not even bother to identify, passed through Qatar National Bank correspondent bank accounts in the United States on their way to Turkey. (Complaint ¶¶ 100, 102). To be more precise, the Complaint actually simply surmises—in wholly conclusory and counter-factual fashion—that those alleged "funds *necessarily* passed through QNB's correspondent accounts" in New York." (Complaint ¶ 102 (emphasis added); *cf.* ¶ 122 (U.S. dollar transfers "are *virtually all* processed through" New York) (emphasis added)). This conclusory allegation is not coupled with an allegation that Qatar Charity directed that the funds it was allegedly sending from Qatar to Turkey pass through New York or that it even knew about the New York correspondent banking relationship.

Plaintiffs do not, and cannot, plausibly allege that Qatar Charity's purported use of a Qatari bank account to send funds to Turkey would provide grounds for a finding that it should have "reasonably anticipate[d] being haled into court" in Florida—to do so would be "nonsensical." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 403 (S.D.N.Y. 2021). Plaintiffs no doubt intend to rely on caselaw holding that, in some limited circumstances, the use of a correspondent account for purposes of transferring dollars suffices to establish jurisdiction. But those cases involve *bank* defendants—not "an individual [customer's] wiring of funds that incidentally pass through a New York-based correspondent account." *Berdeaux*, 561 F. Supp. 3d at 403. Judge Caproni noted in *Berdeaux* that she was "[un]aware of any" authority—and we submit that there is none—standing for the principle that a non-domiciliary bank *customer* may be subject to jurisdiction in New York, or any other U.S. state, simply "because the non-

domiciliary moved money between foreign bank accounts, with the transfer passing through [that state] via a correspondent account." *Berdeaux*, 561 F. Supp. 3d at 404 (collecting cases).

Plaintiffs' theory, resting as it does on the role banks play in routing international fund transfers, thus fails—because Qatar Charity is not a bank. Indeed, applying such a theory of jurisdiction to a banking *customer* would be, as noted above, "nonsensical." *Berdeaux*, 561 F. Supp. 3d at 403 n.25 ("Absent unusual circumstances, an individual bank customer would have no reason to direct its foreign bank to use a New York-based correspondent account for a transaction that, such as those at issue here, has no other connection to New York."). "None of that is anywhere close to sufficient to show that [the defendant] transacted business in New York." *Berdeaux*, 561 F. Supp. 3d at 402; *cf. id.* at 402 (these allegations are "insufficient as a matter of law"); *accord Vasquez v. Hong Kong & Shanghai Banking Corp.*, 477 F. Supp. 3d 241, 253, 259 (S.D.N.Y. 2020); *Universal Trading & Inv. v. Tymoshenko*, 2012 WL 6186471, at *3 (S.D.N.Y. Dec. 12, 2012) ("the Court's research [has not] revealed any cases" that support argument that passage of money through New York correspondent accounts can create jurisdiction over a foreign customer); *cf. DirectTV Latin Am. v. Park 610, LLC*, 691 F. Supp. 2d 405, 423–24 (S.D.N.Y. 2012). For this reason alone, ordering alternative service here would be improper. This consideration is a particularly weighty one on these facts, where Plaintiffs' requested relief is an affront to both United States and Qatari law.

## CONCLUSION

For the foregoing reasons, Defendant Qatar Charity respectfully requests that this Court deny Plaintiffs' Motion for an Order Authorizing Alternative Service of Process.

13

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 11, 2022<br>Miami, Florida | **DLA PIPER LLP (US)**<br><br>By: */s/ Harout J. Samra*<br>    Harout J. Samra (Bar No. 70523)<br><br>200 South Biscayne Boulevard, Suite 2500<br>Miami, FL 33131<br>Tel:  305.423.8534<br>E-mail:  harout.samra@dlapiper.com<br><br>John M. Hillebrecht*<br>Kevin Walsh*<br>Jessica A. Masella*<br>Lane Earnest McKee*<br>Michael G. Lewis*<br>    *Pro Hac Vice<br><br>1251 Avenue of the Americas, 27th Floor<br>New York, NY 10020<br>Tel:  212.335.4500<br>E-mail:  john.hillebrecht@us.dlapiper.com<br>           kevin.walsh@us.dlapiper.com<br>           jessica.masella@us.dlapiper.com<br>           lane.mckee@us.dlapiper.com<br>           michael.lewis@us.dlapiper.com<br><br>*Counsel for Defendant Qatar Charity* |