UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
CASE NO.: 22-CV-80726-DMM

ARTHUR BARRY SOTLOFF Individually and as the
Administrator of the Estate of STEVEN JOEL SOTLOFF;
SHIRLEY GOLDIE PULWER, and LAUREN
SOTLOFF,

           Plaintiffs,

Vs.

QATAR CHARITY, a Foreign Non-Profit Organization
and QATAR NATIONAL BANK (Q.P.S.C), a Foreign
Multinational Commercial Bank

           Defendants.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MEMORANDUMS IN OPPOSITION TO PLAINTIFFS' *EX PARTE* MOTION FOR ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS UPON THE FOREIGN DEFENDANTS**

  Plaintiffs, ARTHUR BARRY SOTLOFF Individually and as the Administrator of the Estate of STEVEN JOEL SOTLOFF, SHIRLEY GOLDIE PULWER and LAUREN SOTLOFF, by and through undersigned counsel, and pursuant to this Court's Order dated October 28, 2022 [ECF No. 41] and state as follows:

**OPENING STATEMENT**

  Pursuant to this Court's dated as of October 28, 2022 [ECF No. 41], both Defendants filed their responses in opposition to Plaintiff's *Ex-Parte* Motion for Order Authorizing Alternative Service [ECF No. 9]. A review of the respective responses reveals, not surprisingly, that the Defendants' arguments, in opposition to the Ex-Parte Motion, overlap and are nearly identical.

Both responses assert Plaintiffs have not met the standard for alternative service, *see* ECF No. 44 ("QNB Opp.") at 4; ECF No. 45 ("QC Opp." at 5); both responses claim that Plaintiffs' request for alternative service is contrary to Qatar law, *see* QNB Opp at 6; QC Opp. at 4; both responses assert the court's intervention is not necessary, *see* QNB Opp. at 9; QC Opp. at 8.

Notwithstanding, the Defendants' arguments, Plaintiffs' Ex-Parte Motion establishes that Plaintiffs have met the standard for alternative service, the court's intervention by means of authorizing alternate service is warranted, the method proposed does not offend due process concerns and is consistent with a multitude of other similar rulings of this jurisdiction. Moreover, contrary to Defendants' claims, according to Qatari Civil Procedure, Plaintiffs' request for alternative service is not contrary to Qatar law.

Interestingly, there is one significant difference in the two responses; Qatar Charity's included an Order entered in the matter of *Matthew Schrier v. Qatar Islamic Bank*, 20-60075-CIV-Altman/Hunt (SDFL). See ECF No. 45-2. Schrier case involved similar issues concerning alternate service. A reading of the Schrier Order shows that the defendant therein, a Qatari financial institution accused of terror finance, raised arguments in opposition to alternative service similar to and overlapping with those raised by Defendants here.

In *Schrier*, this Court granted a motion for alternative service by FedEx on defendant and by email to defendant's counsel, under nearly identical circumstances to those before it now. ECF No. 45-3 ("*Schrier* Order"). As here, the *Schrier* plaintiff brought suit before this court under the Anti-Terrorism Act, alleging that a Qatari financial institution had provided material support to terrorist organizations. *Schrier* Order at 1. As in *Schrier,* Plaintiffs "d[o] not have a recourse through the Hague Convention." *Schrier* Order at 6; Motion at 7. As here, the *Schrier* plaintiff demonstrated that letters rogatory service "could take a year or more." *Schrier* Order at 2, 6;

Motion at ¶ 19. Accordingly, as here, the *Schrier* plaintiff did not attempt service by letters Rogatory. *Schrier* Order at 2. In both *Schrier* and this matter, the attempted service by commercial shipping carrier "to Defendant's proper address by the Clerk has been returned as undeliverable." *Schrier* Order at 6 (by FedEx); ECF No. 43 (by DHL).

Qatar Islamic Bank, the defendant in *Schrier*, unsuccessfully opposed alternative service on grounds nearly identical to those relied upon by Defendants Qatar National Bank ("QNB") and Qatar Charity ("QC"), namely, the misapprehension that (1) Qatari law's supposed prohibition on service by commercial carrier and email binds this Court, and that (2) Plaintiffs are required to exhaust all other forms of service, including letters rogatory, before requesting alternative service under Federal Rule of Civil Procedure 4(f)(3). *Schrier Order* at 4-6; QNB Opp. at 6-11; QC Opp. at 4-11. The Court should dispose of these arguments as it did under similar facts in *Schrier*, and grant Plaintiffs' motion for alternative service.

The Schrier Court concluded:

> The facts of a particular case will determine whether service via email on a foreign party's local counsel is a proper means of alternate service. However, to alleviate this concern, the undersigned orders that Plaintiff re-attempt service via mail or FedEx. Should this attempt return as undeliverable, then Plaintiff shall effectuate service via email on both Defendant's local counsel and the email accounts of the banking officials mentioned during the hearing.

Defendants' instant arguments are no more persuasive than Qatar Islamic Bank's in *Schrier* and thus Plaintiffs' request for authorization to proceed via alternate service should be granted.

**ARGUMENT**

I. **The Federal Rules of Civil Procedure, not the Qatar Civil and Commercial Procedure Law, Govern These Proceedings (Regardless, Plaintiffs' Proposed Alternative Service Does Not Violate Qatari Law)**

Defendants QC and QNB attempt to read a requirement into Fed. R. Civ. P. 4(f)(3) that alternate service comport with the procedural laws of Qatar. QC Opp at 4-5; QNB Opp at 6-7

3

(citing *Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 927 (11th Cir. 2003). The defense in Schrier asserted a similar argument; unsuccessfully. There is no such requirement. In this matter, service process is governed by Rule 4(f).

Rule 4(f) clearly contemplates service of process in violation of the laws of the defendant's home country (which is not the case here), albeit requiring that such service comport with any applicable international agreements. *Compare* Fed. R. Civ. P. 4(f)(3) *with* Fed. R. Civ. P. 4(f)(2). Indeed, district courts are obligated to exercise their discretion under Rule 4(f)(3), even if they are not obligated to authorize a particular method of service. *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 84 (D.C. Cir. 2014) (citing Prewitt, 353 F.3d at 928 n. 21).

In *Schrier*, this Court, while "recogniz[ing] that [*Prewitt Enterprises*] stands for the proposition that courts should try to minimize offenses to foreign law," and noting that "Defendant argues that service through email is not permitted by Qatari law," nevertheless exercised that discretion to authorize service by FedEx and e-mail on a Qatari defendant. *Schrier* Order at 3, 5.

Moreover, the alternative service proposed by Plaintiffs does not violate Qatari law. Qatari civil procedure specifically provides for alternative service via mail pursuant to court order.

In fact, QNB's response acknowledges that there is a "carveout," found in Article 11 of the Qatar Civil & Commercial Procedure Law. QNB Opp. at 6-7 (citing Articles 2 & 11, Qatar Civil & Commercial Procedure Law (Law No. 13 of 1990)).

Article 11 provides as follows:

> *Notwithstanding the preceding Articles*, the court may notify any person inside the country or abroad whether at his place of residence or place of work by registered mail or in any other manner which it deems appropriate.

4

Dkt. No. 45-2 at 7 (emphasis added).[1] QNB paraphrases this provision and states that a "*Qatari court*" may effect service by "*Qatari registered mail*," QNB Opp. At 6-7 (emphasis in original). This paraphrasing is contrary to the plain language of Article 11 in several regards. First, Article 11 merely refers to "the court," presumably meaning the court in which a claim is filed; second, Article 11 does not specify that the registered mail of Qatar be used; third, Article 11 permits service by "any other manner which it deems appropriate," which facially includes the registered mail of any nation, FedEx, DHL, and email. Dkt. No. 45-2 at 7. Lastly, it is worth noting that Article 11 explicitly permits extraterritorial service on "any person inside the country or abroad." *Id*. Certainly it cannot be said that the methods of service proposed by Plaintiffs in their motion constitute a "substantial affront" to Qatari Law. *See* QC Opp. At 5 (quoting *Prewitt Enters.*, 353 F.3d at 927); QNB Opp. At 9 (same).

## II. Unduly Long Delays Associated with Letters Rogatory Merit Exercise of this Court's Discretion to Order Alternative Service

Next, as Defendant QC notes, "Courts in the Southern District of Florida '[t]ypically . . . permit alternate service 'only where the defendant's foreign address is unknown; the defendant has successfully evaded service; [or] failure to permit alternate service will result in unduly long delays in litigation.'" QC Opp. at 8 (quoting *Commodity Futures Trading Comm'n v. Fingerhut*, 2020 WL 4499198, at *2 (S.D. Fla. May 29, 2020) (quoting *Int'l Designs Corp. v. Qingdao SeaForest Hair Prod. Co.*, 2018 WL 2364297, at *3 (S.D. Fla. Jan. 4, 2018)) and citing *Schrier* Order at 5) (emphasis added).

---

[1] The link to the Qatar Civil & Commercial Procedure Law provided by Defendant QNB at note 7 of its opposition was not functioning consistently as of the time of drafting. Accordingly, Plaintiffs cite to the copy provided by QC as an exhibit to its opposition at ECF No. 45-2.

5

Without offering an example of what it might consider an "unduly long delay" Defendant QC argues that Plaintiffs "offer only a 'general assertion that service via' Letters Rogatory might 'take years to accomplish.'" Id. at 9 (quoting Fingerhut, 2020 WL 4499198, at *2); *see also* QNB Opp. at 4 ("Plaintiffs also fail . . . to show that "the district court's intervention is necessary.") (quoting Int'l Designs Corp., 2018 WL 2364297, at *3). This Court rejected the same argument by Qatar Islamic Bank in *Schrier*:

> Here, unlike *Fingerhut*, Plaintiff has done more than simply suggest that service through a letter rogatory could result in an unspecified period of delay. Taking into account the Department of State's representation that a letter rogatory could take at least a year, the fact that the world is currently being affected by the coronavirus pandemic, and that service to Defendant's proper address by the Clerk has been returned as undeliverable, the undersigned finds the facts of this case distinguishable from those in *Fingerhut*. Further, in contrast to the plaintiffs in *International Designs*, Plaintiff does not have a recourse through the Hague Convention and has attempted service twice prior to seeking relief from this Court.

*Schrier* Order at 6. Plaintiffs go a step further by providing the court with empirical evidence of undue delay in serving letters rogatory specific to the foreign jurisdiction in question. Motion ¶ 19 ("In the EDNY actions it took over two years from the filing of the earliest complaint (June 10, 2020) for defendant Qatar National Bank to receive service by letters rogatory (August 1, 2022)").[2]

Even assuming that the COVID-19 pandemic does not further delay an already slow process, the "background" position of the U.S. Department of State remains that "[e]xecution of letters rogatory may take a year or more. Letters rogatory are customarily transmitted via diplomatic channels, a time-consuming means of transmission." *Preparation of Letters Rogatory*,

---

[2] Defendants prefer to use the motion for issuance of letters rogatory as the start date for calculating delay caused by letters rogatory. QNB Opp. at 10; QC Opp. at 9. In *Force v. Qatar Charity* plaintiffs first moved for issuance of letters rogatory on September 11, 2020, No. 1:20-cv-2578, ECF No. 37 (E.D.N.Y. Dec. 1, 021), Qatar National Bank and Qatar Charity acknowledged service of process on August 1, 2022 and August 30, 2022, respectively, No. 1:20-cv-2578, ECF Nos. 77, 80 (E.D.N.Y. Dec. 1, 2021).

U.S. Department of State, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html. This Court treated the same State Department document as sufficient basis to conclude that *Schrier* was distinguishable from *Fingerhut* and that the plaintiff had met his burden of demonstrating "unduly long delays." *Schrier* Order at 5-6.

### III. Plaintiffs are Not Required to Exhaust other Forms of Service before Requesting Alternative Service

Defendants cite a Hague Convention case for the proposition that "a district court 'may require the plaintiff to show that they have reasonably attempted to effectuate service on defendant . . . .'" QNB Opp. at 8 (citing Int'l Designs Corp., 2018 WL 2364297, at *3). Plaintiffs have reasonably attempted to effectuate service on defendants; Plaintiffs sent a courtesy copy of the Complaint and Summons, in English and Arabic, along with a letter explaining the contents, via DHL. QNB received and signed off on the delivery, QC did not. Thereafter, Plaintiffs filed the Ex-Parte Motion and also had the Clerk of Court send copy of the Summonses and Complaint, in English and Arabic, via DHL, as well.

Defendants note that Plaintiffs have not initiated letters rogatory service. QNB Opp. at 3-4; QC Opp. at 9. Plaintiffs are not required to have done so in order to move the court for alternative service. Motion ¶ 28 (citing *Rio Props. Inc., v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002); *Brookshire Bros., Ltd. v. Chiquita Brands Int'l*, Case No. 05-CIV-21962, 2007 WL 1577771, at *1 (S.D. Fla. May 31, 2007) ("The invocation of Rule 4(f)(3), therefore, is neither a last resort nor extraordinary relief"); *TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 692 (S.D. Fla. Jan 11, 2012) (noting that, in regards to Rule 4(f)(3), "there is no indication from the plain language of the Rule that the three subsections, separated by the disjunctive "or," are meant to be read as a hierarchy.")).

7

At its discretion, a district court *may* require that a party attempt Hague Convention service where available, or, as here, to show that "the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile.'" *Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prod. Co.*, No. 17-60431-CIV, 2018 WL 2364297, at *3 (S.D. Fla. Jan. 4, 2018) (quoting *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005)). Defendants rely heavily on *Int'l Designs* but fail to note that, as this Court notes in *Schrier*, the plaintiffs in *Int'l Designs* had recourse to the Hague Convention. *See Schrier* order at 6. Furthermore, Defendants also fail to note that the court in *International Designs* offered six months as an example of undue delay. 2018 WL 2364297, at *3 (citing *In re Takata Prods. Liab. Litig.*, No. 15-2599, 2017 WL 8809362, 2017 U.S. Dist. LEXIS 71816 (S.D. Fla. Mar. 24, 2017)). Indeed, the Hague Convention itself offers safeguards against delay unavailable in the letters rogatory process, as it permits recourse to alternative service after six months. *Id.* (citing Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment). Plaintiffs have demonstrated that letters rogatory service, which no party has or can reasonably allege will take less than six months, is "unduly burdensome." *See id.* at *3. Accordingly, this court both can and should exercise its discretion in granting Plaintiffs' motion.

### IV. Plaintiffs May Serve Counsel for Defendants Regardless of Whether Counsel are Authorized by Defendants to Receive Such Service

Defendant Qatar Charity protests that "'there is no indication' that Qatar Charity is authorized to accept service on behalf of Qatar Charity (and it is not)." This Court has authorized service by email on counsel who have conducted activity requiring communication with the defendant, such as filing a motion to dismiss. *U.S. Commodity Futures Trading Comm'n v. Aliaga,* 272 F.R.D. 617, 20 (S.D.Fla.2011). Under these circumstances "service upon Defendants via e-mail and through service on local counsel is reasonably calculated to apprise Defendants of the

pendency of this action and afford them an opportunity to present their objections" and therefore comports with due process requirements. *Id*. *See also Brookshire Bros.*, 2007 WL 1577771, at *2. As noted by the D.C. Circuit, "[a] number of courts thus have sanctioned service on United States counsel as an alternative means of service under Rule 4(f)(3) without requiring any specific authorization by the defendant for the recipient to accept service on its behalf." *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 83 (D.C. Cir. 2014) ("internal citations omitted") (citing, among other authority, *See Aliaga,* 272 F.R.D. at 619–20 (authorizing service on foreign defendants through local counsel who stated that "he is not authorized to accept service of process on behalf of either defendant"); *RSM Prod. Corp. v. Fridman,* No. 06 CIV. 11512(DLC), 2007 WL 2295907, at *1–6 (S.D.N.Y. Aug. 10, 2007) (similar); *Brookshire Bros. v. Chiquita Brands Int'l,* No. 05–CIV–21962, 2007 WL 1577771, at *2 (S.D.Fla. May 31, 2007) (similar)).

## V. Defendants Confuse the Due Process Requirements of General Personal Jurisdiction with the Due Process Requirements of Service

Defendants make each make a different due process argument. QNB attacks a straw man by arguing that "bare notice alone does not suffice to satisfy due process." QNB Opp. at 5. QC previews (inapplicable) forum contact arguments from the personal jurisdiction section of its forthcoming motion to dismiss. QC Opp. at 11-13. In regards to the former, QNB correctly notes that due process requires both (1) actual notice and (2) *authorization* for service of summons on a defendant. QNB Opp at 5-6 (quoting *Prewitt*, 353 F.3d at 924-25). "In other words, an individual or entity 'is not obliged to engage in litigation unless [officially] notified of the action ... under a court's authority, by formal process.'" *Prewitt* 353 F.3d at 925 (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999)).

9

As the remainder of the paragraph partially quoted by QNB makes clear, that *authorization* is provided by Rule 4 of the Federal Rules of Civil Procedure. *Id*; *see also Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("The next question, then, is whether there is authorization to serve summons in this litigation. Today, service of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure. Rule 4(f) describes where process "may be served."). Because Rule 4 authorizes this court to order the alternative service proposed in Plaintiffs' motion, the due process requirement of authorization is satisfied.

Addressing the latter, effective service is a prerequisite of personal jurisdiction, not vice versa. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.") Indeed, QC can point to no provision of Rule 4, or any case law requiring that a court determine—as a prerequisite of service of process—whether there is a constitutionally sufficient relationship between the defendant and the forum. *See* QC Opp. at 11-13. Plaintiffs agree with QC's uncontroversial proposition that "[a] court is required to have personal jurisdiction under the Due Process Clauses of the Fifth and Fourteenth Amendments to the U.S. Constitution . . ." in order to adjudicate a claim. *See* QC Opp. at 2-3 (quoting *Prewitt*, 353 F.3d at 921). QC will have the opportunity to air its objections to the Court's exercise of personal jurisdiction over Defendants in its motion to dismiss. For the preservation of judicial resources, Plaintiffs will address these arguments in their opposition to QC's motion to dismiss, and for the time being merely note that they have no bearing on whether this court should grant Plaintiffs' motion for alternative service.

## CONCLUSION

For the above reasons, this Court should grant Plaintiffs' motion for alternative service.

By: /s/*George A. Minski, Esq.*
George A. Minski, Esq.
FBN. 724726
**LAW OFFICES OF GEORGE A. MINSKI, P.A**.
*Co-Counsel for Plaintiffs*
2500 Hollywood Boulevard
Hollywood, FL 33020
Dade: 305-792-2200
Broward: 954-362-4214
Email: gminski@minskilaw.com
Primary email: dgomez@minskilaw.com

**PERLES LAW FIRM PC**
Steven R. Perles
Joshua K. Perles
Edward Macallister
Emily Amick
816 Connecticut Ave. NW,
12th Floor
Washington D.C. 20006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 18, 2022, a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record.

By: /s/*George A. Minski, Esq.*
George A. Minski, Esq.
FBN. 724726