UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-cv-80726-MIDDLEBROOKS/Matthewman

ARTHUR BARRY SOTLOFF, individually
and as the Administrator of the Estate of
STEVEN JOEL SOTLOFF; SHIRLEY
GOLDIE PULWER; and LAUREN SOTLOFF;

    Plaintiffs,

v.

QATAR CHARITY, a Foreign Non-Profit
Organization; and QATAR NATIONAL
BANK (Q.P.S.C); a Foreign Multinational
Commercial Bank;

    Defendants.

_____/

## ORDER GRANTING PLAINTIFFS' *EX PARTE* MOTION FOR ORDER AUTHORIZING ALTERNATIVE SERVICE OF PROCESS

THIS CAUSE comes before the Court upon Plaintiffs' *Ex Parte* Motion for Order Authorizing Alternative Service of Process Upon the Foreign Defendants, filed on August 10, 2022. (DE 9). The Motion is fully briefed.[1] (DE 44; DE 45; DE 46). For the foregoing reasons, Plaintiffs' Motion is granted.

### BACKGROUND

This case arises from the gruesome beheading of Steven Sotloff ("Decedent Sotloff"), an American journalist reporting from Syria, by Islamic State of Iraq and Syria ("ISIS") members on

---

[1] On October 27, 2022, I entered an Order directing (1) Defendants to respond to Plaintiffs' Motion and (2) Plaintiffs to reply to Defendants' response. Defendants filed nearly identical, but separate responses in opposition. (DE 44; DE 45). Accordingly, I address their arguments together and make distinctions when appropriate.

1

August 31, 2014. (DE 1 ¶ 2). Plaintiffs are family members of Decedent Sotloff. (DE 1 ¶¶ 29-31). Defendants are Qatari entities; Qatari National Bank ("QNB") and Qatar Charity ("QC"). QNB is a domestically owned commercial bank. (DE 1 ¶ 32). QC is a non-profit organization. (*Id.* ¶ 40). Plaintiffs allege that "ISIS judge Fadhel al Salim" ("al Salim") directed the murder of Decedent Sotloff. (*Id.* ¶ 3). Plaintiffs further allege that Defendants paid al Salim "$800,000 ten months earlier . . . so that he could . . . [commit] acts of terror, such as the murder of American hostages like [Decedent Sotloff]." *Id.*

Plaintiffs initiated this action on May 13, 2022, alleging that Defendants violated various federal statutes by providing material support to terrorists. On August 10, 2022, Plaintiff moved for an order authorizing alternative service. (DE 9).

## DISCUSSION

Plaintiffs' Motion requests that I authorize alternative service of process under Fed. R. Civ. P. 4(f)(3). The alternative service would be via "FedEx to [Defendants'] offices in Qatar and via email to counsel located in New York City." (DE 9 at 2).

Rule 4(f)(3) states that unless federal law provides otherwise, a corporation "may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders."[2] Fed. R. Civ. P. 4(f)(3), Fed. R. 4(h)(2). The Court has discretion to permit or not permit service of process pursuant to Rule (4)(f)(3). *See Prewitt Enterprises, Inc. v. Organization of Petroluem Exporting Countries*, 353 F.3d 916, 926–927 (11th Cir. 2003). Courts generally examine three factors "in determining whether to exercise [their] discretion and permit alternative service of process." *Tracfone Wireless, Inc. v. Hernandez*, 126

---

[2] The Parties agree that there is no international agreement between the United States and Qatar regarding service of process.

F. Supp. 3d 1357, 1364 (S.D. Fla. 2015). "First, the Court must be satisfied that the proposed method of service is reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* (citation and quotations omitted). "Second, the Court must determine if the proposed method of service minimizes offense to foreign law." *Id.* (citing *Prewitt Enters., Inc.*, 335 F.3d at 927). "Third, the Court must determine if the facts and circumstances warrant exercise of its discretion under Fed. R. Civ. P. 4(f)." *Id.* (citation omitted). I will take each in turn.

The first factor is a due process consideration. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Moreover, "[a]bsent consent, this means there must be *authorization* for service of summons on the defendant." *Prewitt Enters., Inc.*, 335 F.3d at 925 (emphasis in original). Here, the proposed methods of service are reasonably calculated to apprise Defendants of the action. And, if allowed by this Court, it would also be *authorized* pursuant to Rule 4(f).

Defendants *do not* dispute that service via FedEx to Defendants' respective addresses in Doha, Qatar, and emails to Defendants' attorneys would be reasonably calculated to apprise Defendants of this action.[3] Instead, Defendants argue that "actual notice" is not enough to comport

---

[3] Such an argument would defy what has already happened in other cases where the same Defendants, Defendants' attorneys, and Plaintiffs' attorneys (representing different plaintiffs) are actively litigating similar cases. *See Przewozman, et al. v. Qatar Charity, et al.*, No. 1:20-cv-6088 (E.D.N.Y. Dec. 1, 2021); *Henkin, et al. v. Qatar Charity, et al.*, No. 1:21-cv-5716 (E.D.N.Y. Dec. 1, 2021); *Force, et al. v. Qatar Charity, et al.*, No. 1:20-cv-2578, (E.D.N.Y. Dec. 1, 2021). In all three cases ("EDNY Cases"), the same plaintiffs' attorneys served the same Defendants via letters

with the due process requirement.[4] (DE 44 at 5; DE 45 at 3). That proposition—standing alone—is correct under *Prewiit*. *Prewitt Enters., Inc.*, 335 F.3d at 925. However, *Prewitti* goes on to say that in addition to *notice*, "[a]bsent consent . . . there must be *authorization* for service of summons on the defendant . . . . under a court's authority, by formal process." *Id*. In *Prewitt*, service was *not authorized* under Rule 4(f)(2)(C)(ii) because the proposed method of service was prohibited by foreign law. *Id*. Once the court moved on to Rule 4(f)(3)—at issue here—it did not raise the due process concern because, had the court allowed the proposed alternative service, it would have been *authorized* under Rule 4(f)(3).[5] *See Id*. Thus, here, both parts of the due process requirement are met: notice and authorization.

Second, a proposed method of service minimizes offense to foreign law if it is not "expressly prohibited" by the forum's law. *See Tracfone Wireless, Inc*, 126 F. Supp. 3d 1365; *see also Prewitt Enters., Inc.*, 335 F.3d at 928 n.21("We do not say that a district court never has discretion to direct service of process under Fed. R. Civ. P. 4(f)(3) that is in contravention of a

---

rogatory at the addresses listed in this Motion (DE 45 at 9) and communicated with the same defendants' attorneys via the same emails listed in this Motion. (DE 9 at 4).

[4] On August 10, 2022, Plaintiffs filed a Motion for Judicial Notice of the docket reports in the EDNY Cases. (DE 10). Defendants have not responded in opposition and instead rely heavily on actions taken in those cases for their briefing in opposition to this Motion. There is no question that the docket reports provided by Plaintiffs are accurate. Accordingly, this Court takes judicial notice of the dockets in the EDNY Cases.

[5] Defendants cite to, largely out of context, three district court orders that appear to stretch *Prewitt*'s language beyond this. (DE 45 at 3). Those decisions are not binding on this Court. Defendants also rely heavily on my Order denying a motion for alternative service of process in *Wildes v. Bitconnect Intl. PLC*, 2018 WL 4864836 (S.D. Fla. Mar. 20, 2018). In that Order, however, I held that Plaintiffs' proposed service did not comply with the due process requirement because "Plaintiffs provide no facts suggesting that the [Twitter] accounts are still active and monitored" and uncertainty about the accuracy of Defendants' mailing address. *Id*. at *2. There are no similar concerns in this case.

foreign law."). "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1.

The Parties agree that the relevant sources of Qatari law to look at are Articles 2 and 11 of the Qatar Civil & Commercial Procedure Law (Law No. 13 of 1990). (DE 45-1 at 5, 11). Article 2 states:

> Every notification or enforcement must be made by service through the Police or any authority designated by the Chief of the Supreme Judiciary Council, *at the request* of litigants, clerks' office or by an order from the court. Litigants or their representatives may address the proceedings and submit their papers to the clerks' office to be served or executed unless otherwise specified by the law. Officials or policemen entrusted with service of the notice or enforcement shall be held liable for their torts in the course of their duties.

Article 2, Qatar Civil & Commercial Procedure Law (Law No. 13 of 1990) (emphasis added). Article 11 states, "[n]otwithstanding the preceding Articles, the court may notify any person inside the country or abroad whether at his place of residence or place of work by registered mail or in any other manner which it deems appropriate." *Id.* at Article 11.

Defendants argue that only a Qatari court may serve process via registered mail and all others must be by "[p]olice or any authority designated by the Chief of the Supreme Judiciary Council." (DE 45 at 7). Article 2, however, is triggered "at the request" of a litigant, clerk, or court. And Article 11, does not expressly limit service by registered mail to a Qatari court (assuming it means only a Qatari court when it says "the court"). Given this ambiguity, I find that Qatari law does not "expressly prohibit" Plaintiffs' proposed service. *See Matthew Schrier v. Qatar Islamic Bank*, ECF No. 122, 20-CIV-60075 (S.D. Fla. June 3, 2021) (finding the same).

Defendants raise a related point that is worth addressing: "Plaintiffs' proposed methods of service risk leading to a potential judgment that is ultimately unenforceable in Qatar . . . ." (DE at 44 11). I find this claim to be highly speculative. The same source of Qatari law has a provision, Article 380, on the "Enforcement of Foreign Judgments, Orders and Official Deeds." Article 380 states:

> An enforcement order shall only be rendered after verification that:
>
> 1- The courts of the State of Qatar are not solely competent to adjudicate the dispute in which the judgment or order is rendered, and that the foreign courts which have rendered it are competent according to the international jurisdiction rules specified in their law.
>
> 2- The litigants in the lawsuit in which the judgment is rendered have been duly summoned and represented.
>
> 3- The judgment or the order has acquired the force of res judicata pursuant to the law of the court which has issued it.
>
> 4- The judgment or the order is not contradicting a judgment or an order previously rendered by a court in Qatar, and that it does not contain any violation to the public order or the morals therein.

Article 380, Qatar Civil & Commercial Procedure Law (Law No. 13 of 1990). This provision gives Qatari courts (assuming that is the entity that makes the "verification") great latitude, independent of the service of process issue, to decide the enforceability of a foreign judgment. Given the overall uncertainty created by Article 380, I refuse to deny Plaintiffs' Motion based on such a speculative outcome.

Third, the facts in this case merit the exercise of the Court's discretion under Rule 4(f)(3) to allow alternative service via FedEx and email for two reasons. First, Plaintiffs' proposed alternative service will avoid undue delay. Plaintiffs initiated this action on May 13, 2022. (DE 1) and filed this Motion on August 13, 2022. (DE 9). If Plaintiffs' Motion were denied, they

6

would have to serve Defendants via letters rogatory. Letters rogatory, transmitted via diplomatic channels, "may take a year or more."[6] Such a delay is especially inefficient given how long Plaintiffs' Motion has been pending. Second, there is no doubt that Defendants will receive notice of this action.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

(1) Plaintiffs' *Ex Parte* Motion for Order Authorizing Alternative Service of Process Upon the Foreign Defendants (DE 9) is **GRANTED**.

   a. Plaintiffs shall serve Defendants in the manner described in their Motion (DE 9) within 30 days of this Order: via FedEx to Defendants' offices in Qatar and email to Defendants' attorneys.

   b. Plaintiff shall file returns of service. For FedEx, Plaintiff may file a proof of signature or proof of delivery. For the emails, Plaintiff shall file proof that the emails were sent to the emails listed in their Motion (DE 9 at 4).

(2) Plaintiff's Motion for Request for Judicial Notice (DE 10) is **GRANTED**.

---

[6] *Preparation of Letters Rogatory*, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/obtaining-evidence/Preparation-Letters-Rogatory.html (last visited Nov. 30, 2022).

(3) A separate Order addressing the briefing schedule for Defendants' Motion(s) to Dismiss is forthcoming.

**SIGNED** at Chambers, in West Palm Beach, Florida, this __1__ day of December, 2022.

Donald M. Middlebrooks
United States District Judge

cc:   Counsel of Record