**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| ARTHUR BARRY SOTLOFF Individually and as Administrator of the Estate of STEVEN JOEL SOTLOFF; SHIRLEY GOLDIE PULWER, and LAUREN SOTLOFF,<br><br>Plaintiffs,<br><br>v.<br><br>QATAR CHARITY, a Foreign Non-Profit Organization and QATAR NATIONAL BANK (Q.P.S.C.), a Foreign Multinational Commercial Bank,<br><br>Defendants. | Case No. 9:22-cv-80726 (DMM) |

**DEFENDANT QATAR CHARITY'S REPLY MEMORANDUM**
**IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**

Harout J. Samra
**DLA PIPER LLP (US)**
200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Tel:  305.423.8534
Email:  harout.samra@dlapiper.com

John M. Hillebrecht*
Kevin Walsh*
Jessica A. Masella*
Michael G. Lewis*
    *Pro Hac Vice
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Tel:  212.335.4500
Email:  john.hillebrecht@us.dlapiper.com
           kevin.walsh@us.dlapiper.com
           jessica.masella@us.dlapiper.com
           michael.lewis@us.dlapiper.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 1

    I.   PLAINTIFFS FAIL TO ESTABLISH A BASIS FOR EXERCISING PERSONAL JURISDICTION OVER QATAR CHARITY ................................................................... 1

        A.  Plaintiffs Did Not Serve Qatar Charity Pursuant to the Anti-Terrorism Act's Nationwide Service Provision................................................................................ 1

        B.  Plaintiffs Fail to Establish a *Prima Facie* Basis for Exercising Personal Jurisdiction Over Qatar Charity Under Rule 4(k)(1)(a) and the Florida Long-Arm Statute ............ 1

            1.  Plaintiffs Fail to Satisfy Due Process Requirements .............................................. 4

        C.  Plaintiffs Fail to Establish a *Prima Facie* Basis for Exercising Personal Jurisdiction Over Qatar Charity Under Rule 4(k)(2) and the Federal Long-Arm Statute ................ 4

            1.  Plaintiffs Fail to Satisfy Due Process Requirements .............................................. 5

            2.  Qatar Charity is Not Subject to Personal Jurisdiction Under an Agency Theory... 7

        D.  Plaintiffs' Request for Jurisdictional Discovery Should Be Rejected ......................... 7

    II.  PLAINTIFFS FAIL TO STATE ANY CLAIM FOR RELIEF .......................................... 7

        A.  Plaintiffs Fail to Plausibly Plead a Primary Liability Claim Under Section 2333(a) – Counts III and IV Must Be Dismissed ......................................................... 9

        B.  Plaintiffs Fail to Plausibly Plead a Secondary Liability Claim Under Section 2333(d) – Counts I and II Must Be Dismissed ............................................................ 9

            1.  The Complaint Does Not State a JASTA Conspiracy Claim ................................ 9

            2.  The Complaint Does Not State a JASTA Aiding and Abetting Claim ................. 10

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                    Page(s)

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
   480 U.S. 102 (1987)......................................................................................................7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................................9

*Berdeaux v. OneCoin Ltd.*,
   2021 WL 4267693 (S.D.N.Y. 2021)..............................................................................7

*Carey v. Kirk*,
   2022 WL 4594124 (S.D. Fla. 2022)...............................................................................4

*In re Chiquita Brands Int'l*,
   284 F. Supp. 3d 1284 (S.D. Fla. 2018) ..........................................................................9

*CJS Sols. Grp., LLC v. Tokarz*,
   2021 WL 848159 (M.D. Fla. 2021)...............................................................................4

*Condor S.A. v. Plurinational State of Bolivia*,
   2022 WL 17479905 (Fla. Dist. Ct. App. 2022) ....................................................1, 2, 4

*Del Valle v. Trivago GMBH*,
   2022 WL 17101160 (11th Cir. 2022) ............................................................................2

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983)..................................................................................9, 10

*Hard Candy, LLC v. Hard Candy Fitness, LLC*,
   106 F. Supp. 3d 1231 (S.D. Fla. 2015) ..........................................................................7

*Hinkle v. Cirrus Design Corp.*,
   775 Appx. 545 (11th Cir. 2019).....................................................................................7

*Honickman v. BLOM Bank SAL*,
   6 F.4th 487 (2d Cir. 2021) ........................................................................................8, 10

*Internet Sols. Corp. v. Marshall*,
   39 So. 3d 1201 (Fla. 2010).............................................................................................2

*Kernel Records Oy v. Mosley*,
   2010 WL 2812565 (S.D. Fla. 2010)...............................................................................2

*Licci v. Lebanese Canadian Bank, SAL*,
   20 N.Y.3d 327 (2012) ..................................................................................................5

*Louis Vuitton Malletier, S.A. v. Mosseri*,
   736 F.3d 1339 (11th Cir. 2013) ................................................................................5, 6

*Merkin v. PCA Health Plans*,
   855 So. 2d 137 (Fla. Dist. Ct. App. 2003) ...................................................................2

*Miller v. Arab Bank*,
   372 F. Supp. 3d 33 (E.D.N.Y. 2019) ............................................................................9

*Miller v. Gizmodo Media Grp., LLC*,
   383 F. Supp. 3d 1365 (S.D. Fla. 2019) ........................................................................3

*Morris v. Khadr*,
   415 F. Supp. 2d 1323 (D. Utah 2006) ..........................................................................6

*Noble House v. Underwriters at Lloyd's*,
   2021 WL 896219 (S.D. Fla. 2021) ...............................................................................4

*Oueiss v. Saud*,
   2022 WL 1311114 (S.D. Fla. 2022) ....................................................................2, 3, 5

*Schrier v. Qatar Islamic Bank*,
   2022 WL 4598630 (S.D. Fla. 2022) .....................................................................1, 2, 6

*Sovereign Offshore Servs. v. Shames*,
   2017 WL 7798664 (S.D. Fla. 2017) (Middlebrooks, J.) ...............................................3

*In re Takata Airbag Prods. Liability Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) ........................................................................5

*Weiss v. Nat'l Westminster Bank PLC*,
   278 F. Supp. 3d 636 (E.D.N.Y. 2017) ........................................................................10

**Statutes & Rules**

Fla. Stat. § 48.193(1)(a)(2) ...................................................................................................1

Fed. R. Civ. P. 4 .........................................................................................................1, 4, 5, 7

## PRELIMINARY STATEMENT

As is true of their Complaint, Plaintiffs' Opposition ("Opp. Mem.") to the pending motion to dismiss is entirely devoid of allegations sufficient to support their prima facie case. Plaintiffs do not allege facts sufficient to plausibly suggest that Qatar Charity—recently praised by the State Department as "one of the best organizations in the world"—is in any way responsible for the terrorist act at issue. Qatar Charity is not a "designated SDN," and it did not transfer any monies to "an FTO," as is falsely claimed. Furthermore, each of Plaintiffs' theories in support of this Court's exercise of personal jurisdiction is fundamentally flawed.

## ARGUMENT

### I. PLAINTIFFS FAIL TO ESTABLISH A BASIS FOR EXERCISING PERSONAL JURISDICTION OVER QATAR CHARITY

There are only three potential bases for this Court to exercise personal jurisdiction over Qatar Charity. (*See* Complaint ¶ 27). Each fails. We address these failures in turn.

#### A. Plaintiffs Did Not Serve Qatar Charity Pursuant to the Anti-Terrorism Act's Nationwide Service Provision

Plaintiffs contend the Court may exercise jurisdiction under the ATA, which provides for nationwide service of process. (*See* Complaint ¶ 27). But Plaintiffs did not effect service in the United States pursuant to the ATA's nationwide service provision. Plaintiffs served Qatar Charity via FedEx *in Doha*. (*See* Dkt. No. 52). Because Plaintiffs' service in Doha "exceed[ed] the territorial limitations of the [ATA], [they] did not effect service *under the ATA* and [are] precluded from invoking the ATA as a statutory basis for personal jurisdiction." *Schrier v. Qatar Islamic Bank*, 2022 WL 4598630, at *7 (S.D. Fla. 2022) (emphasis in original).

#### B. Plaintiffs Fail to Establish a *Prima Facie* Basis for Exercising Personal Jurisdiction Over Qatar Charity Under Rule 4(k)(1)(a) and the Florida Long-Arm Statute

The Florida long-arm statute allows Florida courts to exercise jurisdiction over a person as to "any cause of action arising from . . . committing a tortious act *within this state*." Fla. Stat. § 48.193(1)(a)(2) (emphasis added). As the Florida Court of Appeal recently underscored, specific jurisdiction over a nonresident defendant can only exist where that defendant "commits [an act] *in Florida*, so long as the cause of action *arises from* that enumerated act committed *in Florida*." *Condor S.A. v. Plurinational State of Bolivia*, 2022 WL 17479905, at *1 n.4 (Fla. Dist. Ct. App. 2022) (emphases added). Of course, there is no allegation of any kind of any conduct (tortious or not) by either defendant in Florida. This is fatal to Plaintiffs' argument

precisely because Florida law is clear that a cause of action must "arise from" tortious conduct within the state of Florida (an "act committed in Florida"), a requirement which is strictly construed. *Id.*; *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1208 (Fla. 2010); *Oueiss v. Saud*, 2022 WL 1311114, at *1, 11 (S.D. Fla. 2022). Plaintiffs' causes of action are all grounded in an "act of international terrorism"—the abduction, torture, and murder of Stephen Sotloff—that occurred in Syria, not Florida. (*See, e.g.*, Complaint ¶ 240). Plaintiffs do not allege otherwise. *See generally Schrier*, 2022 WL 4598630, at *13 ("Schrier would have to establish that Nusra operatives committed 'a tortious act *within the state*'") (emphasis in original) (citation omitted). Again, under Florida law "[a] tort claim is deemed to have occurred where the last event necessary to make the defendant liable for the tort took place." *Merkin v. PCA Health Plans*, 855 So. 2d 137, 140 (Fla. Dist. Ct. App. 2003). That would be the execution of Mr. Sotloff in Syria (not Florida). Furthermore, neither the Complaint nor the Opposition attempts to plead—nor could they—plausible facts that the terrorists at issue, while conducting their heinous murder of Mr. Sotloff in Syria, were engaged in conduct "aimed at" the state of Florida. The very suggestion is absurd. As we previously argued (Def. Mem. [Dkt. No. 54] at 9-10), but Plaintiffs invite the Court to ignore, courts in the Eleventh Circuit "have never interpreted the long-arm statute to ***automatically*** provide personal jurisdiction over a defendant who is alleged to tortiously cause an injury in Florida." Rather, they have done so only "in certain contexts [where defendants] took tortious actions ***directed toward the state***." Courts in this Circuit thus "look to whether the defendant ***directed*** its conduct at Florida." *See Kernel Records Oy v. Mosley*, 2010 WL 2812565, at *5 (S.D. Fla. 2010) (foreign torts causing injury in Florida only justiciable where "that conduct was directed at Florida residents . . . and the harm was felt exclusively or primarily in Florida") (emphasis added). That is not this case here.[1]

Faced with the defense briefing, Plaintiffs now claim for the first time that this requirement is satisfied by ISIS's publication of videos online and the alleged intentional infliction of emotional distress that followed. (Opp. Mem. at 15). However, Plaintiffs' primary and secondary liability claims both rely solely on the purported act of "international terrorism" giving rise to Plaintiffs' injuries: the abduction and murder of Mr. Sotloff.

---

[1] For similar reasons, the facts of the *Del Valle* case upon which Plaintiffs rely are easily distinguishable from this case—there the defendants utilized advertising intentionally and specifically targeting Florida residents and earned a "substantial part" of their revenue from those residents. *Del Valle v. Trivago GMBH*, 2022 WL 17101160, at *2-4, 6 (11th Cir. 2022).

That Plaintiffs rely entirely on a single defamation case (Opp. Mem. at 15) should tell the Court something. As is obvious from its subject matter, the case concerns only the jurisdictional reach of defamatory statements made about a Florida resident. *Miller v. Gizmodo Media Grp., LLC*, 383 F. Supp. 3d 1365, 1371 (S.D. Fla. 2019). This has nothing to do with the facts alleged here. Furthermore, this Court has already rejected the argument that tortious blog posts "accessible" in Florida can be the basis for an exercise of personal jurisdiction absent a plausible allegation that they were ***directed*** at Florida consumers. *Sovereign Offshore Servs. v. Shames*, 2017 WL 7798664 (S.D. Fla. 2017) (Middlebrooks, J.). In addition, the Complaint does not plead any facts which would establish that any of the Plaintiffs actually "accessed in Florida" any of the referenced videos.

Plaintiffs are plainly grasping at straws, radically shifting their arguments and theories in response to our briefing. This defamation-based reasoning has no application here. Furthermore, any latter-day effort to attempt to allege intentional infliction of emotional distress claims against Qatar Charity, which obviously had no knowledge of or role in publishing these videos, would lack any merit. All of the claims that Plaintiffs actually do assert reference, as the statute requires, "an act of international terrorism," defined by Plaintiffs as the "abduction, torture, and murder of Steven Sotloff." (Complaint ¶ 240; *cf.* Opp. Mem. at 18 (referencing the execution as "the wrongful act that caused Plaintiffs' injuries")). None of these things happened in Florida and no overt act regarding those things is alleged to have been taken in Florida. Indeed, there is ***no conduct*** by any defendant alleged to have been taken in, or intentionally directed towards, Florida. Again, this is not a close call. As set forth above, Florida law requires a tortious act committed within the state, which must constitute a "'substantial connection' between the cause of action and the activities within the state." *Oueiss*, 2022 WL 1311114, at *11. The posting of videos by ISIS operatives in Syria do not satisfy this requirement even as to them, much less as to Qatar Charity. But this is a frolic and a detour that the Court should not indulge. None of Plaintiffs' actual ATA and JASTA claims "arise from" these videos. This latter-day argument is an irrelevance.

Plaintiffs also argue that the requirements of Florida's "co-conspirator theory" of personal jurisdiction are satisfied "because [Defendants] conspired with Al Salim and ISIS." (Opp. Mem. at 16). Indeed, they assert jurisdiction based ***entirely*** on a theory of conspiracy. (Complaint ¶ 27). This effort is fundamentally defective: they have not alleged, as they must, "a conspiracy made or carried out ***in Florida***." *Carey v. Kirk*, 2022 WL 4594124, at *4 (S.D. Fla.

3

2022) (emphasis added). Under Florida law, to invoke this theory of jurisdiction the Complaint "must contain clear, positive and specific allegations" regarding a given defendant's knowledge of and participation in the alleged scheme, "with specificity," as well as competent allegations that a "member of that conspiracy committed tortious acts in Florida"; absent that, the court "must dismiss" the Complaint. *Condor*, 2022 WL 17479905, at *2-3. Here, Plaintiffs' allegations regarding conspiracy are wholly conclusory and devoid of factual content. The Opposition concedes that "an overt act in furtherance of the conspiracy" must occur *in Florida*—which obviously did not happen—and attempts to skate over this deficiency with nothing more than the conclusory assertion that "the overt act of intentional infliction of emotional distress furthered the conspiracy." (Opp. Mem. at 16). For the reasons set forth above, this argument makes no sense. Plaintiffs have failed to allege the occurrence of any overt act in furtherance of the alleged gravamen of their complaint, the "act of international terrorism," *in Florida*.

1. *Plaintiffs Fail to Satisfy Due Process Requirements*

Even were this Court to find that Plaintiffs have sufficiently alleged a basis for personal jurisdiction over Qatar Charity under the Florida long-arm statute—which they obviously have not—Plaintiffs' allegations fail to satisfy the requirements of due process. Plaintiffs' claims that their allegations satisfy due process under the "effects doctrine" (Opp. Mem. at 10-13) ignore the law of this Circuit, which "require[s] more than mere allegations that a foreign defendant committed an intentional tort that caused harm to a plaintiff residing in the forum state." *CJS Sols. Grp., LLC v. Tokarz*, 2021 WL 848159, at *10 (M.D. Fla. 2021). Rather, a defendant's conduct must "connect[ ] him to the forum in a meaningful way," which Qatar Charity's alleged transfer of funds (which, as alleged, involved Florida in no way at all) plainly does not. *Noble House v. Underwriters at Lloyd's*, 2021 WL 896219, at *5 (S.D. Fla. 2021); *CJS Sols.*, 2021 WL 8481159, at *10. For this, and the other reasons discussed *infra* in Section (I)(C)(1), Plaintiffs' claims cannot satisfy due process.

C. **Plaintiffs Fail to Establish a *Prima Facie* Basis for Exercising Personal Jurisdiction Over Qatar Charity Under Rule 4(k)(2) and the Federal Long-Arm Statute**

Plaintiffs also (inconsistently) purport to rely on the federal long-arm statute, citing Rule 4(k)(2). Rule 4(k)(2) was adopted to address the rare issue of non-resident defendants that have sufficient contacts with the United States as a whole, even though they lack sufficient contacts with any individual state, to support the exercise of jurisdiction. *See In re Takata Airbag Prods. Liability Litig.*, 396 F. Supp. 3d 1101, 1152 (S.D. Fla. 2019). Plaintiffs' resort to this Rule here

4

is, of course, fatally inconsistent with their argument that jurisdiction in Florida is appropriate. In any event, Plaintiffs do not, and cannot, plausibly allege that Qatar Charity has sufficient contacts with the United States. In fact, the Opposition conspicuously ignores this requirement. (*See* Opp. Mem. at 2-10). This is unsurprising. The Complaint does not allege a single contact between Qatar Charity itself and the United States. Not one. And, as we pointed out previously (Def. Mem. at 12), there is no conspiracy theory of jurisdiction under Rule 4(k)(2). *See Oueiss*, 2022 WL 1311114, at *19 ("Rule 4(k)(2) does not permit the exercise of conspiracy-based personal jurisdiction").

### 1. *Plaintiffs Fail to Satisfy Due Process Requirements*

Plaintiffs fail to pass the three-part "minimum contacts" test for the due process inquiry in specific jurisdiction cases. That test examines: (1) whether the claims "arise out of" the defendants' contacts; (2) whether the defendant "purposefully availed" itself of conducting activities within the forum; and (3) whether the exercise of jurisdiction would be "fair play." (*See* Opp. Mem. at 3).

***First***, Plaintiffs must establish that their claims "arise out of or relate to" Qatar Charity's contacts with the forum. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). The Complaint is devoid of allegations of ***any*** contacts whatsoever between Qatar Charity itself and the United States (much less Florida). Plaintiffs offer the baseless conclusion that Qatar Charity "deliberately chose dollars because their terrorist payees wanted them" and thereby "intentionally availed themselves of the U.S. financial system." (Opp. Mem. at 7). Even assuming *arguendo* that Qatar Charity made the transfer at issue to al Salim—which it did not— these claims ignore the critical facts that U.S. dollars are held by financial institutions around the world and that U.S. dollar transfers between foreign entities need not necessarily be routed through the United States. *See, e.g.*, *Licci v. Lebanese Canadian Bank, SAL*, 20 N.Y.3d 327, 340 (2012) (bank could have routed U.S. dollar transactions anywhere in the world). There is no allegation here that Qatar Charity even knew that a New York correspondent account was used (if it was). Plaintiffs continue to ignore this gaping chink in their armor. As we argued previously, numerous courts have held that Plaintiffs' position on this score as to a bank ***customer*** is "nonsensical." (*See* Def. Mem. at 1, 14-15).

***Second***, Plaintiffs must plausibly allege that Qatar Charity "purposefully availed" itself of the "privilege of conducting activities within the forum." *Louis Vuitton*, 736 F.3d at 1355; *Schrier*, 2022 WL 4598630, at *25 (noting that the Supreme Court "has been quite clear" that the

5

issue focuses solely on "contacts that the defendant *himself*" had with the forum). They cannot do this, and they really do not even try. Again, they do not attempt to argue that Qatar Charity even knew about the putative use of a New York correspondent account, much less directed such. (Def. Mem. at 14-15). Instead, Plaintiffs point to a District of Utah decision, *Morris v. Khadr*, to suggest that the "effects doctrine" is sufficient to satisfy this requirement. (Opp. Mem. at 10). In this Circuit, however, the effects test requires that the tort at issue: (1) be "intentional"; (2) be "*aimed at* the forum state"; and (3) "cause[ ] harm that the defendant should have anticipated would be *suffered in the forum state*." *Louis Vuitton*, 736 F.3d at 1356 (emphases added). Plaintiffs offer only illogical conclusory statements in support of these required elements. (*See* Opp. Mem. at 13 ("the payment from QC to FTO member [sic] Fadhel al Salim was 'aimed at or has [sic] an effect in the forum'")). How could an alleged payment from an entity headquartered in Qatar through a bank based in Qatar to an individual in Turkey (assuming it occurred) possibly be "aimed" at Florida specifically, or the U.S. generally?

Similarly, and as the *Schrier* court pointed out, "the facts of [*Morris*, the Utah "effects" case relied on by Plaintiffs here] are very different from ours." *Schrier*, 2022 WL 4598630, at *21. In *Morris*, the defendant "was an al Qaeda leader" with a "direct connection" to the attack at issue. 2022 WL 4598630, at *22 (citing *Morris v. Khadr*, 415 F. Supp. 2d 1323, 1327 (D. Utah 2006)). The *Schrier* court found the facts before it "totally different" from *Morris* and other precedent cited by the plaintiff—just as the facts before this Court, involving a world-leading charitable organization falsely alleged to have made a single transfer of funds to an individual who allegedly committed acts of terror some time substantially thereafter, are closer to *Schrier*.

Thus, Plaintiffs have failed to demonstrate either that their claims "arise out of or relate to" contacts between Qatar Charity and Florida (or the U.S.) or that the Charity "purposefully availed itself" of forum benefits. Because Plaintiffs fail to satisfy either of the first two prongs of this analysis, the Court need not reach the question of whether the exercise of personal jurisdiction over Qatar Charity would comport with "traditional notions of fair play and substantial justice." *Schrier*, 2022 WL 4598630 at *26 n.22. Regardless, "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987).

As we have made clear from the start, dragging a Qatari entity with absolutely no contact with Florida into court here does not smack at all of "fair play."

### 2. *Qatar Charity is Not Subject to Personal Jurisdiction Under an Agency Theory*

In their Opposition, Plaintiffs argue for the first time that Qatar Charity is subject to personal jurisdiction under Rule 4(k)(2) because QNB was its **agent**. (Opp. Mem. at 13 n.12). This Johnny-Come-Lately argument fails, as the Complaint lacks any allegations that QNB acted as Qatar Charity's agent. To plead agency for jurisdictional purposes, a plaintiff must demonstrate a "high and very significant" degree of "operational control" by the principal over the agent—something more than "'a very close working relationship' and 'regular and extensive contact.'" *Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1241 (S.D. Fla. 2015) (citation omitted). Plaintiffs do not plausibly allege that Qatar Charity had such "operational control" over QNB.[2]

### D. Plaintiffs' Request for Jurisdictional Discovery Should Be Rejected

Plaintiffs have requested jurisdictional discovery. (Opp. Mem. at 17). That request for a fishing expedition should be denied for the reasons articulated in QNB's Reply Brief (incorporated herein). Over the nearly eight-month pendency of this matter, Plaintiffs have never bothered to actually make a motion for such discovery. On those grounds alone, the request should be denied. *See, e.g.*, *Hinkle v. Cirrus Design Corp.*, 775 Appx. 545, 550 (11th Cir. 2019).

## II. PLAINTIFFS FAIL TO STATE ANY CLAIM FOR RELIEF

Surviving dismissal requires more than mere "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Yet those are all that Plaintiffs offer. To make matters worse, Plaintiffs' Opposition frequently makes new "naked assertions" that are not contained in the Complaint. Plaintiffs rely almost entirely on a single alleged wire transfer, which they claim took place "more than two months after" Mr. Sotloff's kidnapping. (Opp. Mem. at 5). Even accepting that Qatar Charity made the transfer alleged, which we do

---

[2] Again, and crucially, banks need not route transactions through the United States in order to obtain U.S. dollars. *See Berdeaux v. OneCoin Ltd.*, 2021 WL 4267693, at *12 n.25 (S.D.N.Y. 2021) ("[a]bsent unusual circumstances, an individual bank customer would have no reason to direct its foreign bank to use a New York-based correspondent account for a transaction that, such as those at issue here, has no other connection to New York"). The Complaint's assertion that the Charity would have intentionally sent money supposedly intended to support terrorism through the U.S. en route to Turkey is silly. (*See* Def. Mem. at 14-15).

not, it was clearly unrelated to the abduction. Many months then passed before Mr. Sotloff's murder, which did not occur until almost a year later, and it is unclear how many months elapsed after the transfer before al Salim allegedly joined ISIS and became a "Judge." Plaintiffs have not alleged that al Salim was ever designated as an SDN or otherwise. They instead rely exclusively on an ambiguous article in the "*Daily Star Lebanon*," a now-defunct English language publication in Lebanon, formerly with a miniscule circulation, that does not support the proposition for which it is cited.[3] To our knowledge, the *Daily Star* was an English-language journal, which was not distributed in Qatar in 2013.[4] According to a report by the Egyptian Media Ownership Monitor in 2018, the *Daily Star* averaged a whopping 0.32% share of newspaper readership—in Lebanon.[5] This English language article is the lynchpin of Plaintiffs' claim that Qatar Charity and its Arabic-speaking staff in Qatar must have known that the "al Salim" to whom the funds were allegedly transferred was a terrorist simply because somebody with a similar (but differently spelled) name was described as "a lawyer who is close to the Al Nusra front" in an obscure English-language journal, which was never published in Qatar. This single dubious source "pale[s] in comparison" to the "numerous sources that sufficed" in the cases Plaintiffs cite. *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 502 (2d Cir. 2021). What's more, public sources arguably contradict Plaintiffs' timeline, suggesting that throughout 2013 a "Fadel al Salim" was affiliated with the Syrian National Council—an organization recognized and endorsed by the U.S. as a legitimate representative of the Syrian people.[6]

---

[3] The article is dated March 19, 2013, and refers to "Fadel al-Salim, a lawyer who is close to the Nusra Front." Plaintiffs' Complaint itself spells the name differently at various points. It is thus not clear whether the person that Plaintiffs allege received funds from QNB is the individual referenced in the article. The Court can take judicial notice that "al Salim" and "al-Salim" are incredibly common Arabic names. *See Salim Surname*, FOREBEARS, https://forebears.io/surnames/salim (last visited Jan. 7, 2023) (noting the popularity of the name, particularly in Middle Eastern countries), annexed hereto as Exhibit 1 to the Declaration of Harout J. Samra in Support of Qatar Charity's Reply Memorandum in Further Support of its Motion to Dismiss the Complaint ("Samra Reply Declaration"). Hereafter, references to exhibits to the Samra Reply Declaration are denoted simply as "Reply Ex. __." Nor does this article do anything other than reference some degree of contact between "al Salim" as a lawyer and the Nusra Front. This is a far cry from providing notice to the world that al Salim was a member of a terrorist organization.
[4] Reply Ex. 2.
[5] Reply Ex. 3.
[6] Reply Ex. 4, p. 21; Reply Ex. 5 (noting that "a senior State Department official said Clinton deemed the [Syrian National Council] a 'leading and legitimate representative of Syrians seeking a peaceful democratic transition'" that was "committed to helping . . . make this transition").

8

A. **Plaintiffs Fail to Plausibly Plead a Primary Liability Claim Under Section 2333(a) – Counts III and IV Must Be Dismissed**

For a primary liability claim to succeed, a plaintiff "must allege and prove that the defendant directly committed an 'act of international terrorism' which caused the plaintiff's injuries." *In re Chiquita Brands Int'l*, 284 F. Supp. 3d 1284, 1307 (S.D. Fla. 2018). Plaintiffs rely heavily on cases like *Miller v. Arab Bank*, an Eastern District of New York decision, without acknowledging its many factual differences from the case before this Court. 372 F. Supp. 3d 33 (E.D.N.Y. 2019). *Miller*'s requirement that a defendant, at minimum, "know[ ] there is a substantial probability that the organization engages in terrorism but does not care" is far from satisfied here. 372 F. Supp. 3d at 45. Plaintiffs' allegations that a single transfer allegedly made by a purported "representative" of Qatar Charity to an individual in Turkey was a terrorist act is nothing other than a reflexive parroting of the requirements of the ATA.[7] (Opp. Mem. at 31). Again, the plausibility of Plaintiffs' claim in this regard rises and falls on the plausibility that "al Salim" was a "known member of al Nusra," meaning, of course, known to Qatar Charity. (Opp. Mem. at 32). The sole basis for that claim—an English language article published in a failing Lebanese journal with an apparently tiny circulation in Lebanon, and no distribution in Qatar at the time, that does ***not*** say he was a member—cannot bear the weight that Plaintiffs would put upon it. (*See supra* note 3.)

Rather than point to allegations satisfying the "substantial factor" requirement, the Opposition simply asserts that the alleged payment to al Salim was "a 'substantial factor' in Steven's murder" (Opp. Mem. at 32), though it allegedly occurred two months after his kidnapping and almost a year before his murder. The attenuation of the alleged transfer from Mr. Sotloff's kidnapping and execution, both temporally and geographically, "weak[ens] the likelihood that the support played a significant role in facilitating" it. *In re Chiquita*, 284 F. Supp. 3d at 1313; *see also* Def. Mem. at 18-19.

B. **Plaintiffs Fail to Plausibly Plead a Secondary Liability Claim Under Section 2333(d) – Counts I and II Must Be Dismissed**

1. ***The Complaint Does Not State a JASTA Conspiracy Claim***

Plaintiffs have failed to plausibly allege a JASTA conspiracy claim. (*See* Def. Mem. at 21-22; *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (a "naked assertion of conspiracy . . . stops short of the line

---

[7] Notably, Qatar Charity had no presence in Turkey prior to 2016. Reply Ex. 7.

between possibility and plausibility of entitle[ment] to relief")). There are no allegations of any direct or indirect contact, communications, financial services, donations, or other conduct between Qatar Charity and the Nusra Front or ISIS, "the person *who committed* the terrorist act." *Weiss v. Nat'l Westminster Bank PLC*, 278 F. Supp. 3d 636, 650 (E.D.N.Y. 2017). The terrorist act at issue here was committed by ISIS, and Plaintiffs fail to allege any connection between Qatar Charity and the Nusra Front or ISIS apart from what they claim to be a single wire transfer to al Salim, who is not alleged to have committed the terrorist act or to have ever been designated or listed by any government and who was not at that time a member of either ISIS or Al Nusra. (*See* Def. Mem. at 27-29).

### 2. *The Complaint Does Not State a JASTA Aiding and Abetting Claim*

Plaintiffs acknowledge that a plausible aiding and abetting claim must satisfy three elements set forth in *Halberstam*: (1) "the party whom the defendant aids must perform a wrongful act that causes an injury"; (2) "the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance"; and (3) "the defendant must knowingly and substantially assist the principal violation." 705 F.2d at 487; Opp. Mem. at 18.

Plaintiffs' conclusory allegations that "Defendants knowingly provided" substantial assistance to ISIS (Complaint ¶ 242) cannot support the required inference that Qatar Charity was "generally aware . . . that it was playing a role in unlawful activities from which [ISIS's] attacks were **foreseeable**." *Honickman*, 6 F.4th at 498 (emphasis added). As discussed above, Plaintiffs do not even allege that the transfer to al Salim was a transfer to ISIS. Similarly, Plaintiffs' reliance on "limited public sources"—here, in fact, a single source—to support their contention that Qatar Charity was aware that the money supposedly transferred to al Salim was "intended for ISIS" is facially insufficient. *Honickman*, 6 F.4th at 502. Again, the idea that the Arabic-speaking staff of the Charity situated in Doha would somehow stumble upon the single article upon which Plaintiffs seek to hang their hat—an English language article in a now-defunct Lebanese publication not distributed in Qatar at the time—is highly implausible, at best. (*See* Section (II)(A).) Furthermore, assuming one knew that al Salim was "a lawyer . . . close to the Nusra Front," that alone would not equate to knowledge that he was "so closely intertwined with . . . violent terrorist activities" as to satisfy the "general awareness" requirement. *Honickman*, 6 F.4th at 499.

10

Plaintiffs also make much of the U.S. Treasury Department's designation of the "Union of Good" as an SDGT.  (Opp. Mem. at 19-20, 23; Complaint ¶¶ 55-56).  But as Plaintiffs surely know, Qatar Charity terminated any association with the Union of Good more than 13 years ago—just months after the U.S. SGDT designation—a fact which Plaintiffs conveniently ignore.[8]  Qatar Charity itself has never been designated as an SDGT or otherwise.

## CONCLUSION

For each of the foregoing reasons and those in our opening brief and QNB's briefs, this Court should dismiss the Complaint in its entirety.

Dated: January 9, 2023
       Miami, Florida

Respectfully submitted,

**DLA PIPER LLP (US)**

By:  */s/ Harout J. Samra*
     Harout J. Samra
     Florida Bar No. 70523

200 South Biscayne Boulevard, Suite 2500
Miami, FL 33131
Tel:  305.423.8534
Email:  harout.samra@dlapiper.com

John M. Hillebrecht*
Kevin Walsh*
Jessica A. Masella*
Michael G. Lewis*
   *Pro Hac Vice*

1251 Avenue of the Americas, 27th Floor
New York, NY 10020
Tel:  212.335.4500
Email:  john.hillebrecht@us.dlapiper.com
        kevin.walsh@us.dlapiper.com
        jessica.masella@us.dlapiper.com
        michael.lewis@us.dlapiper.com

*Counsel for Qatar Charity*

---

[8]  *See* Reply Ex. 6 (letter dated April 2, 2009, by which Qatar Charity terminated its membership in the Union of Good shortly after it was designated an SDGT).  Nor is the Union of Good alleged to have had any involvement in Mr. Sotloff's abduction and murder, rendering Plaintiffs' allegations concerning Qatar Charity's purported membership wholly irrelevant.

11

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 9, 2023, a true and correct copy of the foregoing was served via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record.

By: /s/ *Harout J. Samra*
Harout J. Samra
Florida Bar No. 70523