IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ARTHUR BARRY SOTLOFF Individually and as the Administrator of the Estate of STEVEN JOEL SOTLOFF; SHIRLEY GOLDIE PULWER, and LAUREN SOTLOFF,

   *Plaintiffs*,

v.

QATAR CHARITY and QATAR NATIONAL BANK (Q.P.S.C.),

   *Defendants*.

Case No. 9:22-cv-80726 (DMM) (WDM)

**DEFENDANTS QATAR NATIONAL BANK AND QATAR CHARITY'S
MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL
UNDER 28 U.S.C. § 1292(b), MOTION TO STAY AND MEMORANDUM OF LAW**

Defendants Qatar National Bank (Q.P.S.C.) ("QNB") and Qatar Charity (together, the "Defendants") respectfully file this Motion for Certification for Interlocutory Appeal of the Court's May 30, 2023 Order denying Defendants' Motions to Dismiss (the "Order") [D.E. 70] and Motion to Stay. This motion should be granted for the reasons set forth in the accompanying memorandum of law in support.

**MEMORANDUM OF LAW**

**I.   INTRODUCTION**

This Court recently denied Defendants' respective motions to dismiss for, *inter alia,* lack of personal jurisdiction (D.E. 70). The Court concluded it has personal jurisdiction over QNB pursuant to Federal Rule of Civil Procedure 4(k)(2), based on three alleged contacts with the United States: a single contact QNB allegedly had with an unidentified correspondent bank in New York, and two contacts with the United States by others, which the Court attributed to QNB

1

under a "conspiracy theory" of personal jurisdiction. Order at 29–33, 35–37. Based on these three alleged contacts, the Court determined that QNB had sufficient minimum contacts with the United States for the Court to exercise personal jurisdiction. *Id.* at 42–45. The Court likewise relied on a conspiracy theory of personal jurisdiction under 4(k)(2) to deny Qatar Charity's motion to dismiss. *Id.* at 50-53 ("For very similar reasons, I find that the exercise of personal jurisdiction over [Qatar Charity] is consistent with due process.").

In relying on the acts of alleged co-conspirators to find that the Defendants' contacts with the United States were sufficient under Rule 4(k)(2), the Court departed from the approach taken by the majority of courts, which have concluded that a conspiracy theory of personal jurisdiction is categorically unavailable under Rule 4(k)(2). This Court's interpretation of Rule 4(k)(2) is a pure question of controlling law over which reasonable minds clearly differ. *Cf.* Order at 30 (noting this Court's disagreement with Judge Altman's conclusion in *Schrier v. Qatar Islamic Bank*, 20-60075-CIV, 2022 WL 4598630 (S.D. Fla. Sept. 30, 2022), that Rule 4(k)(2) does not afford conspiracy jurisdiction). And the resolution of this issue would materially advance this litigation by potentially disposing of this case in its entirety. Accordingly, the Defendants respectfully request that the Court allow immediate appeal of the Order and certify the following question pursuant to 28 U.S.C. § 1292(b):

> Whether Federal Rule of Civil Procedure 4(k)(2) permits the exercise of conspiracy jurisdiction, whereby a foreign defendant is subject to personal jurisdiction based upon minimum contacts with the United States resulting from the acts of alleged co-conspirators.

The question regarding the availability of conspiracy jurisdiction is particularly critical in the present case, because the Court specifically declined to find that the single allegation of QNB's own alleged contact with the United States—a supposed $800,000 wire transfer through New York to a "Fadhel al Salim" on October 16, 2013 (Compl. ¶¶ 106–09) (D.E. 1)—*would be* sufficient to

support the exercise of personal jurisdiction over QNB (or Qatar Charity, based on a conspiracy theory).  *See, e.g.*, Order at 45 ("[T]he question is not whether a single correspondent bank transaction establishes purposeful availment.  The question is whether QNB's decision to use a correspondent bank *and* participate in a conspiracy that was aimed at and touched the United States, is enough to establish purposeful availment. I find that it is.") (emphasis in original).  Moreover, there is significant doubt whether Plaintiffs can substantiate that single alleged contact that QNB itself allegedly had with the United States.  As QNB's counsel has informed Plaintiffs' counsel, as well as Magistrate Judge Matthewman at the June 8 scheduling conference, QNB has conducted a diligent and comprehensive search for any record of that alleged $800,000 wire transfer and has been unable to locate any such transaction.  QNB's counsel have requested that Plaintiffs immediately disclose whatever documentary information they relied on to make the allegation of such a transfer from QNB to "al Salim," but Plaintiffs have not yet produced anything to QNB's counsel.[1]

Thus, the question concerning the existence of conspiracy jurisdiction under Rule 4(k)(2), on which this Court has acknowledged a split in authority (with this Court's conclusion reflecting the minority position) is dispositive of the question whether QNB and Qatar Charity are subject to the Court's personal jurisdiction on Plaintiffs' claims.  Because the Eleventh Circuit's resolution of this question could avoid costly international discovery and a complex trial, appellate review of this issue now will serve the interests of judicial efficiency.

For these same reasons, judicial efficiency supports a stay of proceedings in this matter pending guidance from the Eleventh Circuit on this issue—either from an interlocutory appeal in

---

[1] Magistrate Judge Matthewman has ordered the Plaintiffs to produce to the "Defendants documents that support the bank transfer alleged in paragraphs 106 through 109 of the Complaint [DE 1]" within three (3) days after the entry of a confidentiality order.  (D.E. 80).

this case or in an appeal currently pending before the Eleventh Circuit in a separate litigation. As this Court acknowledged (Order at 30), in *Schrier v. Qatar Islamic Bank*, 20-60075-CIV, 2022 WL 4598630 (S.D. Fla. Sept. 30, 2022), Judge Altman granted the defendant-bank's motion to dismiss after it concluded that conspiracy jurisdiction is not available under Rule 4(k)(2) and found that, absent the contacts attributed to the defendant via conspiracy allegations, the defendant lacked minimum contacts for the court to exercise personal jurisdiction. Staying proceedings in this case pending the resolution of an interlocutory appeal in this case or, alternatively, pending the resolution of the appeal in *Schrier*, would promote judicial efficiency. Absent a stay, the parties and the Court would have no choice but to proceed with time-consuming and expensive extraterritorial discovery based on the Order even as the Eleventh Circuit considers the controlling issue underlying this Court's exercise of personal jurisdiction. Given that the issue is already before the Eleventh Circuit—indeed, the parties in *Schrier* completed appellate briefing in April— there is no reason to believe that a stay would result in protracted delay in this case.

## II. ARGUMENT

### A. Certification is Warranted

Section 1292(b) allows a district court to certify one or more issues for interlocutory appeal when: (1) the ruling involves a controlling question of law, (2) there are "substantial grounds for differences of opinion" on the ruling, and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The Eleventh Circuit has "identifie[d] several principles to guide [courts] when deciding whether to exercise [their] discretion" to allow for an interlocutory appeal:

> In general, [courts] exercise [their] discretion only when (1) the appeal presents a pure question of law, (2) the question is controlling of at least a substantial part of the case, (3) the district court identifies the question in its order, (4) there are substantial grounds for differences of opinion on the question, and (5) resolution of the question may reduce the amount of litigation necessary on remand.

4

*Drummond Co., Inc. v. Conrad & Scherer*, LLP, 885 F.3d 1324, 1336 (11th Cir. 2018) (citing *McFarlin v. Canseco Servs.*, *LLC*, 381 F.3d 1251, 1264 (11th Cir. 2004)). Courts in this Circuit often grant requests for interlocutory certification when a movant satisfies the requirements of Section 1292(b). *See Bastian v. United Servs. Auto. Ass'n*, 150 F. Supp. 3d 1284, 1296–97 (M.D. Fla. 2015) (certifying decision for appeal in a "case of first impression" when "there is enough room for interpretation [of Florida statute] to provide 'substantial ground for difference of opinion'"); *Rodrigues v. CNP of Sanctuary, LLC*, No. 11-cv-80668, 2012 WL 12895255, at *2 (S.D. Fla. May 8, 2012) (granting certification for decision rejecting FLSA settlement because it involved "a controlling question of law about which the District Courts in this Circuit have demonstrated a significant difference of opinion"); *Frye v. Ulrich GmbH & Co.*, No. 08-cv-158, 2010 WL 3172167, at *3 (M.D. Ala. Aug. 11, 2010) (certifying question for appeal when "there is minimal Eleventh Circuit case law"); *Grabein v. 1-800-Flowers.com, Inc.*, No. 07-cv-22235, 2008 WL 11417701, at *2 (S.D. Fla. Mar. 12, 2008) (granting motion to certify on a "close question of statutory interpretation upon which reasonable minds could differ" and material term in statute lacked clear definition).

1. **Controlling Question of Law**

A "'controlling question of law' arises where the appellate court can rule on a controlling question of pure law without having to search deep into the record in order to discern the facts." *Havana Docks Corp. v. Carnival Corp.*, No. 19-cv-23588, 2022 WL 1522007, at *3 (S.D. Fla. May 13, 2022) (citing *Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1252–53 (11th Cir. 2003)). "It is enough that the question is 'serious to the conduct of the litigation, either practically or legally.'" *Rodrigues*, 2012 WL 12895255 at *3; *see also Barrientos v. CoreCivic, Inc.*, 951 F.3d 1269, 1271 (11th Cir. 2020) (certifying "purely legal question" of whether federal statute applied to facilities operated by private contractors); *Grabein*, 2008 WL 11417701, at *2

5

(certifying as controlling a question that turned "entirely on a court's interpretation of [a] statutory term"); *S.R. v. United States*, 555 F. Supp. 2d 1350, 1360 (S.D. Fla. 2008) (whether equitable tolling is available under federal statute is a pure question of law and is thus controlling).

Here, there would be no need for the appellate court to dive into the factual record in order to resolve the purely legal question of whether, as a threshold matter, conspiracy jurisdiction is available under Rule 4(k)(2). *Cf. Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1312 (11th Cir. 2018) (decision whether to dismiss complaint for lack of personal jurisdiction subject to *de novo* review). This Court already has rejected any other putative basis of jurisdiction. *See* Order at 18-20. And the issue as framed in this motion is consistent with Eleventh Circuit guidance that "[t]he legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *McFarlin*, 381 F.3d at 1259.

Further, this purely legal question is controlling here. In denying the Defendants' motions to dismiss, the Court relied on three alleged contacts with the United States: (1) QNB's alleged use of a correspondent banking account in New York to facilitate a single wire transfer of $800,000 from Qatar Charity to "al Salim"; (2) the killing of Steven Sotloff by the Defendants' alleged co-conspirators; and (3) the publication of a video of the killing in the United States by the Defendants' alleged co-conspirators. Order at 37. Of these three contacts, only one—the alleged use of a correspondent banking account in New York to facilitate a single wire transfer—involved alleged conduct by QNB. Absent the use of conspiracy jurisdiction, the Court would have excluded from its analysis the second and third alleged contacts. The Court's Order confirms that these additional contacts, attributed to QNB only under a conspiracy theory, were critical to its ultimate determination that it could exercise jurisdiction over QNB (and hence Qatar Charity, under the

same conspiracy theory). *See, e.g.*, Order at 45 ("[T]he question is not whether a single correspondent bank transaction establishes purposeful availment. The question is whether QNB's decision to use a correspondent bank *and* participate in a conspiracy that was aimed at and touched the United States, is enough to establish purposeful availment. I find that it is.") (emphasis in original).[2] Thus, if Rule 4(k)(2) does not provide for the exercise of conspiracy jurisdiction, this Court lacks personal jurisdiction over the Defendants and the Complaint should be dismissed.

Accordingly, the Order involves a purely legal question that controls the result of the Defendants' motions to dismiss.

### 2.  There Are Substantial Grounds for Difference of Opinion

Courts repeatedly have granted motions under Section 1292(b) to allow appellate courts to resolve difficult issues of first impression in the circuit court. *See, e.g.*, *Laperriere*, 526 F.3d 715, 718–19 (11th Cir. 2008) (addressing issue of first impression on certification under Section 1292(b)); *Adams v. Florida Power Corp.*, 255 F.3d 1322, 1322 (11th Cir. 2001) (same). Here, as the Court acknowledged, "[t]here appears to be no controlling precedent or other circuit court decisions that determine whether conspiracy jurisdiction is appropriate under Rule 4(k)(2)." Order at 30. We respectfully submit that fact alone cuts strongly in favor of certifying this issue for immediate appeal. *See Frye*, 2010 WL 3172167, at *3 (granting motion to certify question for appeal where "there is minimal Eleventh Circuit case law"); *Solutia Inc. v. McWane, Inc.*, No. 03-cv-1345, 2008 WL 11337774, at *1 (N.D. Ala. June 25, 2008) (finding substantial grounds for difference of opinion when "[n]either the Supreme Court nor the Eleventh Circuit Court of Appeals has answered this question").

---

[2] The Court's analysis under the Effects Test similarly depended on finding that a conspiracy theory of personal jurisdiction is cognizable under Rule 4(k)(2).  *See* Order at 42–43.

7

Moreover, the resolution of this question at the district court level further confirms that reasonable minds differ. To satisfy this element, some courts have required the movant to "demonstrate that at least two courts interpret the relevant legal principle differently." *In re Pacific Forest Products Corp.*, 335 B.R. 910, 922 (S.D. Fla. 2005). That standard is met in this case many times over. Indeed, the vast majority of courts to address this issue have concluded that conspiracy jurisdiction is categorically unavailable under Rule 4(k)(2). *See, e.g.*, *Schrier*, 2022 WL 4598630, at *25 ("Given that just about every other federal court to have addressed this issue has concluded that conspiracy-based jurisdiction is inconsistent with the language of Rule 4(k)(2) . . . we find that Rule 4(k)(2) doesn't countenance a conspiracy-based theory of personal jurisdiction.").[3] Aside from the Order challenged in this motion, only one other district court has exercised conspiracy jurisdiction under Rule 4(k)(2). *See Rusesabagina v. Republic of Rwanda*, 2023 WL 2562692, at *7–8 (D.D.C. Mar. 16, 2023). And in several other cases, courts rejected attempts to invoke conspiracy jurisdiction under Rule 4(k)(2) but, in *dicta*, did not rule out the possibility that it could be available in some instances. *See Henkin v. Qatar Charity, et al.*, 21-5716-CIV, 2023 WL 2734788, at *10 (E.D.N.Y. Mar. 31, 2023); *Przewozman v. Qatar Charity, et al.*, 20-6088-CIV, 2023 WL 2562537, at *17 (E.D.N.Y. Mar. 17, 2023). Far more courts have rejected the notion of conspiracy jurisdiction under Rule 4(k)(2). *See* n.3, *supra*.

---

[3] *See also Oueiss v. Saud*, No. 1:20-CV-25022-KMM, 2022 WL 1311114, at *19 (S.D. Fla. Mar. 29, 2022) ("Rule 4(k)(2) does not permit the exercise of conspiracy-based jurisdiction."); *Ofisi v. Al Shamal Islamic Bank*, No. 15-2010, 2019 WL 1255096, at *5 n.8 (D.D.C. Mar. 19, 2019) ("Plaintiffs offer no authority for the proposition that courts may assert conspiracy jurisdiction under Rule 4(k)(2)."); *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. Mar. 3, 2015) (rejecting conspiracy theory jurisdiction under Rule 4(k)(2) and holding that "[t]he rules and doctrines applicable to personal jurisdiction are sufficient without the extension of the law to a separate and certainly nebulous 'conspiracy jurisdiction' doctrine").

Finally, "[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case." 16 *Wright & Miller* § 3930, at 422. When, as here, the "proceedings that threaten to endure for several years depend on an initial question of jurisdiction, limitations, or the like, certification may be justified at a relatively low threshold of doubt." *Id.* Given the lack of guidance from appellate courts, and the divided case law from the district courts, the question raised here easily surpasses this "relatively low threshold of doubt" and merits an immediate appeal. *See Rodrigues* 2012 WL 12895255, at *2 (granting certification for decision that involved "a controlling question of law about which the District Courts in this Circuit have demonstrated a significant difference of opinion").[4]

### 3. Resolution of the Legal Question Would Materially Advance the Litigation

The requirement "that the controlling question of law 'may materially advance the ultimate termination of the litigation,' is a straightforward one, simply requiring an examination of whether the 'resolution of [the] controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation.'" *Nat'l Union Fire Ins. Co. of Pittsburgh v. Tyco Integrated Sec., LLC*, No. 13-cv-80371, 2015 WL 11251735, at *5 (S.D. Fla. July 8, 2015) (quoting *McFarlin*, 381 F.3d at 1259). The question raised here easily meets this standard. If the Eleventh Circuit resolves in QNB and Qatar Charity's favor the controlling legal issue as to the availability of conspiracy jurisdiction under Rule 4(k)(2), then Plaintiffs' claims against them would be dismissed and all parties would avoid discovery, dispositive briefing, and trial. *See In re Suntrust Banks, Inc.*

---

[4] *See also Known Litig. Holdings, LLC v. Navigators Ins. Co.*, No. 3:12cv269, 2013 WL 12284920, at *3 (D. Conn. Dec. 5, 2013) ("Further, as in this case, where the question for which a party seeks certification represents a threshold issue like standing or jurisdiction, a lower standard may be applied in evaluating whether or not a substantial ground for disagreement exists.").

9

*ERISA Litig.*, No. 08-cv-3384, 2011 WL 13824, at *3 (N.D. Ga. Jan. 3, 2011) (allowing interlocutory appeal because the appellate decision had the potential of "ending the proceedings in this Court."). An interlocutory appeal that may avoid further proceedings—including a potential trial that would be expensive and time consuming for the Court, the parties, and the jurors—is appropriate in this case. *See Ins. House, Inc. v. Ins. Data Processing, Inc.*, No. 07-cv-0286, 2009 WL 10669726, at *5 (N.D. Ga. Mar. 26, 2009) (granting interlocutory appeal to "prevent[] the parties from having to conduct two very different trials"). These considerations are particularly strong when, as here, the dispute in question goes to the Court's jurisdiction over a party. *See* 16 *Wright & Miller* § 3930, at 422 (if "proceedings that threaten to endure for several years depend on an initial question of jurisdiction, . . . certification may be justified at a relatively low threshold of doubt").

Moreover, if proceedings in this case continue without first resolving the availability of conspiracy jurisdiction under 4(k)(2), addressing Plaintiffs' allegations regarding QNB's conduct and the alleged conspiracy would be complex, protracted, and costly. For instance, as noted above, QNB has conducted numerous searches for any record of the single transaction that the Complaint alleges QNB made involving a correspondent bank in New York, but it has been unable to locate any such transaction despite a diligent and comprehensive search. And Plaintiffs have not provided any evidence reflecting QNB's alleged role in that transaction or any other details that could assist QNB in locating it, despite QNB's multiple requests. If QNB is unable to find information regarding the alleged $800,000 transfer—but assuming Plaintiffs nonetheless have some basis for connecting QNB to the alleged transfer—Plaintiffs would need to rely on third-party foreign discovery directed to Ziraat Bank, a state-owned Turkish bank, in order to authenticate and establish such information so that it would be admissible proof demonstrating

precisely what role (if any) QNB had in facilitating that transfer. Obtaining this foreign discovery would be exceedingly complicated and expensive, both because Ziraat Bank is an instrumentality of a foreign sovereign, and because Turkish law provides parties with limited ability to obtain pre-trial discovery. *See* Declaration Under Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (Aug. 13, 2004) ("[T]he Republic of Turkey declares that: It will not execute letters of request issued for the purpose of obtaining pre-trial discovery documents as known in Common Law countries, as provided for in Article 23."). These same issues would entirely preclude obtaining discovery from Qatar, a foreign sovereign, into allegations regarding the purported conspiracy. *See, e.g.*, Compl. ¶¶ 3–21, 77-79, 90–101.

### B. The Court Should Stay Proceedings Pending Appeal

These same interests of judicial efficiency weigh strongly in favor of granting a stay (1) pending resolution of the interlocutory appeal or, alternatively should the Court decline to certify the Order for appeal, (2) pending resolution of the appeal in *Schrier v. Qatar Islamic Bank*. As explained above, an immediate appeal may avoid further proceedings in this case altogether. But these efficiencies might well be lost absent a stay, as the parties and the Court would have to proceed with time-consuming and expensive discovery based on the Order even as the Eleventh Circuit considers these same issues and is expected to provide direct guidance as to whether conspiracy jurisdiction is cognizable under Rule 4(k)(2). Moreover, given that this precise issue is already before the Eleventh Circuit, staying proceedings pending the outcome of the appeal in *Schrier* would not result in protracted delay of this case, particularly when briefing in that appeal was completed in April. And these considerations are particularly salient where the disputed issue goes to the threshold question of whether the Court may exercise jurisdiction over a defendant. *See* 16 *Wright & Miller* § 3930, at 422 (if "proceedings that threaten to endure for several years

depend on an initial question of jurisdiction, . . . certification may be justified at a relatively low threshold of doubt").

Courts routinely stay proceedings in connection with certifications for interlocutory appeal. *See, e.g.*, *Emmart v. Piper Aircraft Corp.*, 659 F. Supp. 843, 847 (S.D. Fla. 1987) (granting stay pending interlocutory review, noting "the significant effect its decision today has on the ultimate recovery" and "the substantial amount of time it will ultimately take to try this case before a jury"); *see also Mamani v. Berzain*, No. 07-cv-22459, 2014 WL 12689038, at *3 (S.D. Fla. Aug. 18, 2014) (noting that stay would serve interests of judicial economy); *Mais v. Gulf Coast Collection Bureau, Inc.*, 944 F. Supp. 2d 1226, 1254 (S.D. Fla. 2013) (same); *All Fam. Clinic of Daytona Beach Inc. v. State Farm Mut. Auto. Ins., Co.*, No. 09-cv-60902, 2010 WL 11721031, at *1 (S.D. Fla. Mar. 15, 2010) (granting immediate appeal and stay given potential for expensive proceedings that might be mooted on appeal).

But, even if this Court were to decline to certify the Order for interlocutory appeal, a stay nonetheless would be warranted "to await a federal appellate decision that is likely to have a substantial or controlling effect on the claims and issues in the stayed case." *Miccosukee Tribe of Indians v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009). The pending appeal in *Schrier* thus provides a strong alternative basis to stay proceedings in this case. *See Vargas v. United States*, 2017 U.S. Dist. LEXIS 76577, at *1 (S.D.N.Y. May 9, 2017) (granting stay "[i]n light of the pending Supreme Court decisions providing further clarification of [existing precedent] that may bear directly on this case").

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion for interlocutory certification and stay proceedings (and all pre-trial deadlines) pending the

resolution of that interlocutory review. Should the Court deny this motion for interlocutory certification, Defendants respectfully request, in the alternative, that the Court stay proceedings pending resolution of the appeal currently before the Eleventh Circuit in *Schrier v. Qatar Islamic Bank*, No. 22-13513-AA.

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Southern District of Florida Local Rule 7.1, undersigned counsel certify that they have conferred with counsel for Plaintiff on June 6, 2023 regarding the relief requested in this motion and are authorized to report that Plaintiffs oppose this motion.

Dated: June 9, 2023                                                     Respectfully submitted,

/s/ Edward M. Mullins
Edward M. Mullins
**REED SMITH LLP**
200 South Biscayne Boulevard, 26th Floor
Miami, Florida 33131
Telephone: (786) 747-0200
Facsimile: (786) 747-0299
emullins@reedsmith.com

Michael G. McGovern (*pro hac vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, New York 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9090
michael.mcgovern@ropesgray.com

Douglas Hallward-Driemeier (*pro hac vice*)
**ROPES & GRAY LLP**
2099 Pennsylvania Avenue, NW
Washington, DC 20006-6807
Telephone: (202) 508-4600
Facsimile: (202) 508-4650
douglas.hallward-driemeier@ropesgray.com

*Counsel for Defendant Qatar National Bank (Q.P.S.C.)*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 9, 2023, the foregoing was filed with the Clerk of Court using CM/D.E., which will serve a Notice of Electronic Filing on all counsel of record.

*/s/ Edward M. Mullins*
Edward M. Mullins