**If this Transcript is to be reported or published, there is a requirement to ensure that no reporting restriction will be breached. This is particularly important in relation to any case involving a sexual offence, where the victim is guaranteed lifetime anonymity (Sexual Offences (Amendment) Act 1992), or where an order has been made in relation to a young person.**

**This Transcript is Crown Copyright.  It may not be reproduced in whole or in part other than in accordance with relevant licence or with the express consent of the Authority.  All rights are reserved.**



IN THE HIGH COURT OF JUSTICE
QUEEN'S BENCH DIVISION
**[2020] EWHC 3567 (QB)**

No. QB-2019-002712

Royal Courts of Justice
Strand
London, WC2A 2LL

Wednesday, 11 November 2020

Before:

HER HONOUR JUDGE COE QC

(Sitting as a Judge of the High Court)

B E T W E E N :

|  |  |
|---|---|
| BB & Ors. | Claimants |
| - and - |  |
| (1)  MOUTAZ AL KHAYYAT<br>(2)  RAMEZ AL KHAYYAT<br>(3)  DOHA BANK LIMITED | Defendants |

_____

MR B. EMMERSON QC  (instructed by McCue & Partners LLP)  appeared on behalf of the Claimants.

THE FIRST AND SECOND DEFENDANTS did not appear and were not represented.

MS S. TOLANEY QC, MR S. PHIPPS and MS V. SRIRANGAM (instructed by Eversheds Sutherland)  appeared on behalf of the Third Defendant.

_____

**J U D G M E N T**

(via MS Teams)

Exhibit 1

001434

JUDGE COE:

1      By a claim form dated 30 July 2019, eight named claimants commenced claims for damages arising out of allegations of various forms of abuse, mistreatment, and so on, by a terrorist group, the Al Nusra Front. The claimants are all refugees and, I believe, are all now living in the Netherlands. They say that they are entitled to compensation, making claims for damages in respect of their mistreatment and the fact that they had to flee their homes in Syria.

2      The particulars of claim, dated 29 August 2019, sets out the details of the allegations made, as they are framed, against three defendants; Mr Moutaz Al Khayyat, Mr Ramez Al Khayyat and the Doha Bank Limited. It is alleged in the particulars of claim that these defendants are responsible for funding the terrorist group which caused the harm to the claimants.

3      Because of the nature of the allegations, which I do not intend to deal with in any detail, the claimants have the benefit of anonymity orders and appear identified by letters only in the case papers.

4      The first and second defendants have not been served with and have not taken any part in these proceedings so far. The matters I have been dealing with today have been raised by the third defendant, for whom Ms Tolaney QC appears today (together with Mr Phipps and Miss Srirangam).

5      The defendant made an application in December of last year for a stay on the basis of *forum non conveniens*, saying that, in effect, there is a more appropriate forum available, namely, the courts in Qatar. That matter is listed to be heard in a period of two and a half or three days during the course of next week, in a window beginning on Monday.

6      The claimants (effectively reduced to four) now make this application to adjourn next week's hearing. The application is dated 9 November and was only therefore made very recently indeed. The situation is that following the application for a stay based on *forum non conveniens*, the claimants sought to introduce expert evidence, particularly in respect of the law and the court system in Qatar, and that evidence was in place pretty much by June. The claimants contend that there is an ongoing serious and significant conspiracy to pervert the course of justice, a criminal conspiracy, relating to these proceedings. Again, I do not intend to repeat the matters I have read in the various witness statements but it is apparent that the allegations relate to: significant, prolonged and determined attempts to identify the claimants; attempts to bribe and offer other inducements to people to supply information about the case and about the names of the claimants; approaches being made to a consultant with the claimants' solicitors; approaches to a translator and, more recently; approaches to an individual who has provided a statement setting out the basis for some of the allegations which are made not only against the defendants but also against the Qatari state and Qatari officials generally.

7      The position is also complicated by the fact that up until 26 October the claimants were represented by a firm of solicitors, Richard Slade & Company, and as of 5 November the current solicitors, McCue & Partners, took over.

8      It has also become apparent that four of the claimants have indicated it is their intention not to proceed with or to abandon this action and, according to a very recent letter which I have seen, (and which has been redacted), this is on the basis that they feel that they are at risk of

intimidation and because of the alleged harassment, particularly in relation to the translator. Again, I am not setting out any of the details, but that is the outline of the position at the moment.

9  The application to adjourn is made on the basis that the court cannot proceed properly to deal with this issue next week because there is more evidence to come forward and that there is potentially the need for evidence to be given orally.  Importantly for the application, Mr Emmerson QC relies upon the fact that following the change of legal team the decision was made, on advice from counsel, to notify the police (specifically SO15, the Counter Terrorism Command) about the allegations and that it is envisaged, on behalf of the claimants, that pursuant to the state's obligations in the light of these criminal, justiciable matters, there will be an investigation and that, again, the matters raised by the claimants in opposition to the stay application cannot properly be resolved until that investigation is complete.

10  The defendant's position is straightforward.  It says that matter has been listed for a long time.  The defendant is ready to go ahead.  It has the evidence it has filed, disputing some of the evidence filed on behalf of the claimants.  It says this is an expensive and substantial hearing and that, applying ordinary principles, it should not be adjourned and that the claimants are simply seeking to change their position and/or seek more time and/or rely on additional evidence.

11  I should make it clear that I do not consider it necessary, for the purposes of this decision, or even the decision that would be made next week, to identify whether or not the defendant is specifically involved in any funding of terrorism.  It is the claimants' case that the third defendant knows, or ought to have known, about such activity.  As far as the *forum non conveniens* application is concerned, the issue will be whether or not, if Qatar is considered to be a more appropriate and available forum, the claimants will be denied justice or will not be able to achieve justice there.  In the event that there is a criminal conspiracy to pervert the course of justice, as has been identified, and/or any attempt to intimidate any of the witnesses, then clearly that would impact significantly upon the decision of the court at the stay application.  So whilst it has been pointed out, particularly with regard to the third defendant, that the claimants cannot say that it is directly involved in the matters complained of, the fact of those matters if established would be relevant, as I find, to the issues which would have to be resolved at the application for a stay.

12  The matters set out above reflect the parties' positions and the developments which have occurred recently.

13  I remind myself, of course, that this is an application made pursuant to the Civil Procedure Rules 3.2(b), to adjourn or bring forward a hearing, and that in order to decide the application I have to bear in mind and apply the matters which are detailed in the overriding objective.  As far as that is concerned, I therefore have to consider: ensuring the parties are on an equal footing; saving expense; dealing with the case in ways which are proportionate; ensuring that it is dealt with expeditiously and fairly; allocating to it an appropriate share of the court's resource while taking into account the need to allot resources to other cases; and ensuring compliance with the rules, practice directions and orders.

14  Although I have touched on it briefly, I have considered an extract from *Spiliada Maritime Corp v Cansulex Ltd* [1986] UKHL 10 ("*The Spiliada*") dealing with *forum non conveniens*, which sets out that:

> "If however the court concludes at that stage that there is some other available forum which prima facie is clearly more appropriate for the trial of the action, it will ordinarily grant a stay unless there are circumstances by reason of which justice requires that a stay should nevertheless not be granted. In this enquiry, the court will consider all the circumstances of the case, including circumstances which go beyond those taken into account when considering connecting factors with other jurisdictions. One such factor can be the fact, if established objectively by cogent evidence, that the plaintiff will not obtain justice in the foreign jurisdiction."

On that enquiry, the burden would shift to the claimant. It is, therefore, a shifting burden as I have discussed with counsel.

15   The reason for citing that, although I am only concerned with the application for an adjournment, is because it is necessary to identify the task which the court is being asked to undertake in the defendant's application. The burden will be on the defendant in the first instance to show that there is some other available forum which prima facie is clearly more appropriate and then, if appropriate, the burden will shift to the claimant in the way that I have identified.

16   Concerns have been raised by the claimants about the ability of the court in the very particular circumstances of this case to perform that exercise on the basis of the evidence which is currently available to it. That evidence would not include any evidence of more recent allegations of intimidation and/or attempts to pervert the course of justice. It would not involve any oral examination of witnesses. As Ms Tolaney QC has identified, the defendant's position is that there are inconsistencies and unreliable features which can be disproved by some of the evidence in statements filed on behalf of the defendant upon which the court would be able simply to say whether or not the evidence of the claimants should or should not be accepted.

17   The position of the claimants, as I say, has been – at the beginning at least of this hearing – that it is only until there has been this police investigation, and it is complete, that the court would be in a proper position to reach any conclusions on the matters which have been raised. I have considered that point and, indeed, I have raised it with Mr Emmerson QC in the course of this hearing, because I have real concerns that that would go beyond what would be necessary for the court properly to apply the *Spiliada* test. It would be a criminal investigation to the criminal standard. Clearly the burden would be all on the prosecution and, moreover, it is currently only at what is described as a "scoping" stage, which means the extent of any such investigation has not yet even been identified. Whether or not the police would carry out such an investigation is not yet known at all because it may be some other entity of the state which would take on the role. Further, there is no timeframe and I have to balance that against the fact that these are civil proceedings which have already been going on for some time and that there would be significant delay.

18   It seems to me, therefore, that the idea that this matter should be adjourned awaiting a police investigation and that I should make that decision at this stage, is not a reasonable one. It certainly would not accord with the principles of the overriding objective which I have identified as being applicable.

19   On the other hand, if this matter is to go ahead next week the court will find itself in an almost impossible position. This is a very unusual case. It is one which gives rise to very grave allegations and for the court to be making decisions, even on the civil standard, on the

basis of incomplete written evidence only, seems to me to place the court in an invidious position and, in particular, given the circumstances here, to mean that matters could not be dealt with fairly as far as the parties are concerned. Simply to say, "Well, we disagree with that statement" and "I disagree with this statement" and "this statement is riddled with inconsistencies" does not seem to me to give rise to a proper basis for reaching the conclusion that, if it got to that point, there could not be a fair trial or that the claimants would not be safe at a trial in Qatar. I accept that there has been a significant volume of expert evidence which clearly takes the matter quite a long way but there are now very specific factual allegations arising out of specific alleged incidents.

20   Ms Tolaney QC makes the point that if there is a stay, in other words if the defendants are successful next week, and if more evidence does come to light, then, of course, there can be an application to lift the stay. But the whole point about the defendant's application is to say that this matter, if it is to be pursued, should be pursued in Qatar. If the risks that the claimants identify are real then the claimants will find themselves, at least for some time, in the position of either not being able to pursue their claim at all or having to pursue it in circumstances where they consider they would be unable to obtain justice.

21   In those circumstances, I have reached the very reluctant conclusion that this matter must be adjourned. It is reluctant because it involves the loss of significant court time, some two and a half or three days next week. It is reluctant because the application is made late in the day and because it does involve wasted resources and wasted costs. However, I have to balance all of those features, as I have identified, by reference to the overriding objective, to the need to do justice between the parties, to treat them on an equal footing, to ensure that the hearing is fair and to give, as I find it is important, the court a proper opportunity to reach an appropriate conclusion.

22   However, in these circumstances, it seems to me that there is a need for this matter to be managed more robustly in order to achieve the sort of hearing that I have in mind. To that end, as I say, I do not find that it is necessary to wait for a completed state investigation. I do find that it is necessary to enable the claimants to obtain some further evidence, in the light of the matters now being alleged, and also for the defendant(s) to obtain any evidence in response. I intend that the scope of the evidence, in order to enable the court to achieve a fair outcome, should be limited to events alleged to have occurred, I am going to say nine o'clock this morning, which I think would cover any allegations of which anybody is currently aware.

23   There should also be a very strict timetable for the obtaining of appropriate witness statements and affidavits and those in response, so that there can be a directions hearing on a date convenient to counsel in February. If there is to be any application in respect of oral evidence, it is to be made at that hearing. Granting permission for oral evidence at an application for a stay would be a very unusual course to take but I can see that, given the findings that I have already made, it might be difficult in the absence of cross-examination to deal with these matters appropriately. However, I make no decision about that. Any application must be made and I emphasise that it must be made in a way which is appropriate to the nature of the hearing. This would not be a hearing to explore whether or not, in fact, to the criminal standard, there has been a conspiracy to pervert the course of justice or anything of the kind. It is an examination of whether or not this matter should be heard in England and Wales or Qatar.

24   It seems to me that the time estimate for the ultimate hearing of the defendant's application should also be contained. If this matter were to go off for a five-day hearing the first

available date would be so far off as to create too great a delay in the context of this case overall. I therefore also have in mind that it should be listed with a three day time estimate in October 2021 and that the directions given in February, and the efforts of the parties, should be to ensure that the court can deal properly with the application in that limited timeframe. That may mean that there is a timetable for any witnesses who are going to give oral evidence, that there is a limit on cross-examination and that there is, as I say, further/additional robust case management so that it can be dealt with in that time. I do bear in mind what has been said before about the nature of these applications and, even balancing against that, the very unusual nature of this case and the gravity of the allegations, for a *forum non conveniens* application to take more than three days does not seem to me to be reasonable. Those are the matters I can deal with today.

25   I should deal briefly with one final point because I know there is going to be some discussion in respect of costs. This can properly be described as a last-minute application. The matter is listed potentially to start on 16 November and the application was made on 9 November. I have to put that in context. Although I have not (for perfectly proper reasons I am sure) been made privy to all of the reasons for it, the claimants' current solicitor was not, in fact, instructed or on the record until 5 November. It is apparent that correspondence was entered into immediately with some prefacing of this application. I do not know what the reasons for the change of representation are but in the context of the allegations that are made by and on behalf of the claimants, it may be that it is not proper for the court to know, or for the defendants to know, and it may remain the subject of some privilege. I do consider, on the basis of the evidence I have heard and seen, that there has probably been some change in approach. The reasons for that, as I say, I do not know. This is last minute but in light of my findings that of itself is not necessarily a reason not to grant the adjournment. I take Ms Tolaney QC's point that, in essence, the allegations are part of an ongoing conspiracy and so it is fair to say that much of this has already been covered by the evidence disclosed up until the time that the defendant responded, which I think was on 9 October. However, that was not very long ago. If there have been further and yet more determined attempts to derail (as is the phrase that has been used) these proceedings then it is important that those matters are brought to the attention of the court and I am only giving a cut-off point today because I consider that that gives enough of a window of evidence for a proper decision to be made.

**LATER**

26   There are two matters before I deal with the costs application. First of all, I did not say in the course of my reasons that, in fact, it does appear that McCue & Partners were involved prior to being formally instructed and I think Mr Emmerson QC refers to them acting on behalf of those who it seems fund the claimants' litigation. I, again, cannot make any finding about that. It is clearly the subject of privilege. Mr Emmerson QC tells me that McCue & Partners were not privy to any part of the claimants' specific cases and I cannot go behind that. Clearly it is a matter which may yet be of importance at any later hearing(s).

27   The second thing which I should have said is that in respect of the directions hearing, which I am ordering, in February the order should also include a requirement that the claimants update the court as to the position with regard to the investigation. I have made it very clear, I hope, that I do not find it necessary for this matter to be adjourned until the investigation is complete but that does not mean that the court should not be kept apprised of the position with regard to that investigation in case matters become relevant.

28  As far as costs are concerned, this was an application to adjourn and it has effectively been successful and, in ordinary circumstances, costs would follow the event.  But it is right to say, as Ms Tolaney QC points out, that the basis upon which the application was made was for a much looser, general adjournment pending an investigation and I have not made an order in those terms.  It is also right to say that the application was made late, but I have covered that.  It seems to me that there are, or may be, proper reasons for that.

29  I do not consider that it is a valid point to say that there has been ongoing preparation for the hearing and, therefore, extra/unnecessary costs incurred.  I am sure that if there had not been ongoing preparation for the hearing  (on the basis presumably of the claimants being satisfied that their application would be bound to be successful), there would be significant criticism of the claimants.  It is right that there may be some parts of the evidence that could have been either foreshadowed or even filed and served but it would have been in breach of the directions that were already given about evidence for the hearing and I do not find it is more likely than not that the defendants would have allowed it to be admitted, again given the very unusual nature and gravity of the allegations which are being made and which are alleged to be ongoing.

30  I am also aware of the fact that the claimants are in the Netherlands, that the other witnesses referred to are not necessarily in this jurisdiction and I do not know to what extent any or all of them may be English speaking, and, particularly in the current pandemic, that gives rise to significant difficulties.

31  Having given the matter consideration, it seems to me that the best way forward is for costs to be reserved.  By that I mean all of the costs that have been referred to and incurred.  There is a lot here which may yet become clearer and, in fairness, I think that reserving costs is the appropriate order and that is the order I make.

---